**Ira VAUGHN and Bobby Vaughn d/b/a Oak Ridge Lounge and Christy Barber,**

v.

**ST. HELENA PARISH POLICE JURY.**

**CIVIL ACTION NO. 01–772.**

United States District Court, M.D. Louisiana.

Dec. 6, 2001.

Aidan C. Reynolds, Aidan C. Reynolds Trials & Appeals, Baton Rouge, LA, for Plaintiffs.

Scott G. Vincent, New Orleans, LA, for Defendant.

## RULING ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

BRADY, District Judge.

This matter is before the court on plaintiffs' motion (doc. 1) for preliminary injunction. The defendant has filed an opposition. This matter is also before the court on defendant's motion (doc. 9) to dismiss. An evidentiary hearing was held on October 19, 2001. Subject matter jurisdiction is based on federal question, 28 U.S.C. § 1331 and 28 U.S.C. § 1343, inasmuch as the plaintiffs assert claims under 42 U.S.C. §§ 1983, 1985, and 1988.

**Factual Background**

Plaintiffs, Ira Vaughn and Bobby Vaughn, own and operate the Oak Ridge Lounge (the "Lounge") in Pine Grove, in the Parish of St. Helena, State of Louisiana. Mr. Vaughn, along with his wife and son, Bobby, moved to St. Helena Parish in September of 1999 with the intention of opening the lounge. The Vaughns purchased approximately three acres of land on Highway 16. They expended approximately $170,000 in purchasing the property and erecting and furnishing the building that houses the Lounge. The area is rural, with large lots of residential and farm land.

On October 18, 2000, Mr. Vaughn obtained a state Class AG Beer Outside & Liquor Outside Permit to sell, offer for sale, handle or distribute at retail, beverages of low and high alcoholic content. Mr. Vaughn's state license, which was issued by the Louisiana Office of Alcohol and Tobacco Control, will remain current through August 31, 2002. Mr. Vaughn also obtained a Retail Dealer's Beer Permit, Permit No. 209, and a Retail Liquor License, Permit No. 185, from the St. Helena Parish Police Jury, pursuant to Chapter 14 of the Code of Ordinances of St. Helena Parish. These two licenses were issued on January 2, 2001 and are current through December 31, 2001.

Prior to August 28, 2001, Section 14:16 of the Code of Ordinances of St. Helena Parish permitted live entertainment which would include erotic female dancers on any licensed premises. However, the displaying of the pubic hair, anus, vulva, genitals

or nipple of the female breast was prohibited. In addition, Section 14:16 requires that the dancers perform on a stage at least eighteen inches above the floor level and three feet from the patrons.

The plaintiffs testified that they researched Section 14:16 before they moved to St. Helena Parish, and they confirmed that erotic dancing was permitted as long as the dancers wore pasties covering their nipple area and G-strings covering the pubic hair, vulva and anus. They testified that they specifically chose St. Helena Parish, because they wanted to locate the Lounge in a parish that permitted erotic dancing in drinking establishments.

Once open for business, the plaintiffs initially provided only video poker machines and alcoholic beverages. The plaintiffs soon realized, however, that the nearby truck-stop video poker establishments and bars provided too much competition for their business to produce sufficient profits. The plaintiffs attempted to increase revenues by providing live music bands, but this plan failed due to noise complaints from nearby residents.

Disappointed with their business's weekly revenues of $1200, the plaintiffs altered their business plan to include erotic dancing. They hired female dancers to dance topless and in G-strings on raised tables, at least eighteen inches above the floor and separated from the patrons by the required three feet. Almost immediately, the Lounge began producing weekly revenues of around $6000.

At some point, one of the employees of the Lounge set up an electric sign near Highway 16. The four by six foot sign advertises the presence of erotic dancing inside with the words, "Dancing Girls."

Christy Barber, also a plaintiff in this case, has worked for the Vaughns as an erotic dancer at the Lounge. She is not currently employed by the Lounge because she is pregnant. Once she delivers her baby and recovers sufficiently, however, Ms. Barber plans to return to work as an erotic dancer at the Lounge. She testified that she enjoys her job because she feels that erotic dancing is her form of art, and that erotic dancing is her way of expressing her innermost feelings and emotions. She does not believe that she can sufficiently convey her artistic message without displaying more of her body than Ordinance 216 will allow. She also depends on her well-paying job as a dancer at the Lounge for the support of herself, her three children and her fourth child that will soon be born.

Ms. St. Romain lives directly across the street from the Lounge on Highway 16, along with her husband and two children. Ms. St. Romain testified that she complained about the Lounge several times before the plaintiffs began offering erotic dancing. Her initial complaints focused on the prominence of numerous electric beer signs in the Lounge's windows and the excessive noise level emanating from the Lounge due to the live music performances. After the Lounge began offering erotic dancing, Ms. St. Romain added this to her list of complaints about the Lounge. When asked what her major complaints were about the Lounge, Ms. St. Romain testified that she objected to the presence of a bar, along with the increased traffic that the bar's operation caused, in such close proximity to her family residence.

Several residents of St. Helena Parish attended an August 14, 2001 meeting of the St. Helena Parish Police Jury. They complained about the erotic dancing that was occurring at the Lounge, and they requested that the Police Jury do something to stop it. According to the plaintiffs, who also attended the meeting, the President of the Police Jury vowed to "shut down the go-go club." The President instructed the Jury's attorney to

draft an ordinance that would prohibit erotic dancing in St. Helena Parish drinking establishments.

On August 28, 2001, the St. Helena Parish Police Jury reconvened and voted to adopt Ordinance Number 216 of 2001. The new ordinance included provisions, designated Section 14–43, to supercede the existing Section 14:16. Section 14:43(a) prohibits the holder of a retail or wholesale dealer license from permitting "any nude or partially nude person" on the premises. The word "nude" is defined as "a person who is less than completely or opaquely covered such as to expose to view that person's genitals and/or pubic region, all of the buttocks area or the female breast area below a point immediately above the top of the areola."

Section 14–43(d) states, "Violation of this section by a retail dealer's agent, associate, employee, representative or servant shall be considered the retail dealer's act for the purpose of suspension or revocation of the permit."

Section 14:43(e) provides that "violation of this section shall also be a violation of the code of ordinance [sic] and subject to criminal penalties. Whoever violates this section shall be punished by a fine not to exceed $500.00 or imprisonment for a term not exceeding thirty days or by both such fine and imprisonment within the discretion of the court."

Plaintiffs bring this lawsuit claiming that Ordinance 216 is an unconstitutional violation of their rights. Specifically, the plaintiffs argue that the ordinance violates their rights to freedom of expression as protected by the First and Fourteenth Amendments, as well as their procedural due process rights. They also argue that the ordinance is vague and overbroad.

The plaintiffs seek a declaratory judgment invalidating Ordinance 216, declaring it null, void, and unenforceable, along with a permanent injunction against the en-forcement of the ordinance. The plaintiffs request a preliminary injunction, suspending the enforcement of Ordinance 216 until this court issues a final judgment. The plaintiffs also request compensatory damages, punitive damages, and attorney's fees.

The defendant argues that Ordinance 216 is not unconstitutional and requests that this court deny the plaintiffs' motion for a preliminary injunction. The defendant filed a motion to dismiss the action on the grounds of absolute legislative immunity and lack of subject matter jurisdiction.

**Standing**

First, this court will address the standing of the plaintiffs. Ira Vaughn and his son, Bobby, own and operate the Lounge. The Lounge is a drinking establishment in St. Helena Parish that offers erotic dancing pursuant to a liquor and a beer license issued by the St. Helena Parish Police Jury. The erotic dancers at the Lounge display their buttocks and the lower portions of their breasts. Thus, Ordinance 216 applies to the Lounge, and compliance with the ordinance would require the erotic dancers to cover their buttocks and the lower portions of their breasts.

By offering erotic dancing at the Lounge, the Vaughns have increased their weekly revenues from $1200 to $6000. This is due to the substantial increase in the number of customers patronizing the Lounge now that it offers erotic dancing.

The plaintiffs argue that the new customers will cease to patronize the Lounge if they are forced to comply with Ordinance 216. The plaintiffs think, as well, that if the erotic dancers completely cover their buttocks and the lower portions of their breasts, they will not be able to convey the erotic message that the new customers are coming to see. By wearing substantially more than pasties and a G-string, the erotic appeal of their dancing

will be lost. Because regular dancing is prevalent in most bars, the Lounge will lose its unique appeal, and the increased revenue will disappear.

Because compliance with Ordinance 216 would so dilute the erotic appeal of their dancers, the Vaughns would have to fire their dancers and return to other, less profitable operating plans. Without offering erotic dancing at the Lounge, the Vaughns argue that their weekly revenues will return to $1200 per week from their present weekly revenues of $6000. Thus, if Ordinance 216 is enforced and the Vaughns halt the erotic dancing at their bar, they will lose approximately $4800 per week in revenues. If, instead, the Vaughns continue to offer erotic dancing in spite of Ordinance 216, they will be subject to losing the two alcohol licenses issued by the St. Helena Parish Police Jury. They also can be fined $500 and imprisoned for thirty days per violation of Ordinance 216.

Christy Barber has been employed in the past as an erotic dancer at the Lounge. Although she is not currently employed at the Lounge, Ms. Barber plans to return to her employment after she delivers her baby and sufficiently recovers from the pregnancy. Ordinance 216, if it is enforced in St. Helena Parish, will prevent Ms. Barber from returning to her job as an erotic dancer at the Lounge. She testified that she truly enjoys her job as an erotic dancer, which she considers her personal form of artistic expression. She stated that she enjoys working at the Lounge, because the Vaughns run it in a very businesslike and respectful manner. Furthermore, Ms. Barber testified that she receives substantially more income working as an erotic dancer at the Lounge than she would be able to receive at other jobs available to her in St. Helena Parish. If she lost her job at the Lounge, Ms. Barber would have substantial difficulty in supporting herself and her three (soon to be four) children.

Article III standing requires the plaintiffs to demonstrate that they have suffered an "injury in fact," the injury is "fairly traceable" to the defendant's actions, and the injury will "likely ... be redressed by a favorable decision," *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir.); citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

"An injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Public Citizen*, at 217. "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical," *Id.; quoting Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Plaintiffs, Ira and Bobby Vaughn, have established an imminent injury in fact in this case. They have a legally protected interest in their right to free expression, which is protected by the First Amendment and applied against the states by the Fourteenth Amendment. Ira and Bobby Vaughn are currently exercising their First Amendment rights by offering erotic dancing at their drinking establishment. Unless this court enjoins the enforcement of Ordinance 216, the Vaughns will be forced to cease offering erotic dancing at the Lounge, or they will be subject to losing their beer and liquor licenses, incurring a fine, and criminal prosecution. Their interest in exercising their First

Amendment rights is concrete and particularized.

Although Ordinance 216 has not actually injured these legally protected interests, there is a real and immediate threat of such an injury. Ordinance 216 has been enacted by the St. Helena Parish Police Jury. It can be enforced at any time if this court lifts the temporary restraining order and denies the plaintiffs' motion for a preliminary injunction. Thus, Ira and Bobby Vaughn have established an imminent injury in fact.

Plaintiff, Christy Barber, also has an imminent injury in fact. She has a legally protected interest in her First Amendment right to free expression. Erotic dancing in drinking establishments, while displaying her buttocks and the lower portion of her breasts, is Ms. Barber's career. Although her pregnancy is currently preventing her from working, Ms. Barber plans to resume her employment as an erotic dancer at the Lounge after the delivery of her baby. If Ordinance 216 is enforced in St. Helena Parish, Ms. Barber will be prohibited from exercising her right to free expression in the manner she has chosen. Her job at the Lounge will immediately be terminated. Indeed, the enforcement of Ordinance 216 would result in the abolition of her career in St. Helena Parish. Therefore, this court finds that Ms. Barber has established an imminent injury in fact.

Second, the plaintiffs must show that their injuries are "fairly traceable" to the defendant's actions. The defendant is responsible for enacting Ordinance 216 on August 28, 2001. This ordinance prohibits the manner in which the plaintiffs are currently exercising their rights of free expression. More specifically, the ordinance prevents the plaintiffs from providing erotic dancers at their Lounge who display their buttocks and the lower portions of their breasts. Thus, the plaintiffs' injury is fairly traceable to the defendant's enactment of Ordinance 216.

Finally, the plaintiffs must show that their injury will be redressed if this court issues a favorable decision. The plaintiffs request a permanent injunction against the enforcement of Ordinance 216. If the enforcement of the ordinance is enjoined, the plaintiffs will be able to continue exercising their rights to free expression in the manner they are exercising them today. More specifically, the plaintiffs will be able to continue offering erotic dancing, including the display by the dancers of their buttocks and the lower portion of their breasts. Therefore, the plaintiffs have established this court's ability to redress their injury.

Accordingly, this court finds that the plaintiffs, Ira and Bobby Vaughn and Christy Barber, have standing in this matter.

**First Amendment Analysis**

The Supreme Court's most recent case involving bans on public nudity is *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). The Court, with three Justices dissenting, reversed the judgment of the Pennsylvania Supreme Court, which had held that Erie's ordinance prohibiting public nudity was an unconstitutional violation of the First Amendment. Justices Scalia and Thomas agreed that the Pennsylvania Supreme Court's decision must be reversed, but disagreed with the mode of analysis that should be applied. They found that the statute was constitutional not because it survived some lower level of First Amendment scrutiny, but because, as a general law regulating conduct and not specifically directed at expression, it was not subject to First Amendment scrutiny at all. The plurality opinion held that government restrictions on public nudity such as Erie's ordinance should be evaluated under the

framework set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), for content-neutral restrictions on symbolic speech.

When courts are confronted with such fractured Supreme Court opinions, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). The plurality opinion, since it applies greater constitutional scrutiny to the Erie ordinance before upholding it than the opinion signed by Justices Scalia and Thomas, is the narrowest of the two opinions. Therefore, under *Marks,* the plurality opinion is the holding of the Court in *Pap's.*

Although being in a state of nudity is not an inherently expressive condition, nude dancing of the type at issue here is expressive conduct that falls within the outer ambit of the First Amendment's protection. *Pap's,* at 288, 120 S.Ct. 1382; *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–566, 111 S.Ct. 2456, 115 L.Ed.2d 504. To determine what level of scrutiny applies to the ordinance at issue here, this court must decide whether the regulation is related to the suppression of expression. *Pap's,* at 288, 120 S.Ct. 1382; *Texas v. Johnson,* 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). "If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from *O'Brien* for evaluating restrictions on symbolic speech." *Pap's,* at 288, 120 S.Ct. 1382. "If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard." *Id.*

Several cases have held that where the governmental purpose is the prevention of the negative secondary effects associated with erotic dancing establishments, that purpose is unrelated to the suppression of expression. *See, e.g. Pap's; O'Brien; City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29. These negative secondary effects include prostitution, drugs, the sale of pornographic videos, violence, declining property values, and community blight. This valid government purpose, however, will only justify the incidental suppression of expression if the ordinance actually furthers those interests. Thus, the government must produce some evidence that the ordinance is necessary to prevent these negative secondary effects. *See City of Renton; Flanigan's Enterprises, Inc. of Georgia v. Fulton County, Georgia,* 242 F.3d 976 (11th Cir.2001).

The government's burden in showing that the ordinance furthers its interest is not great, however. The First Amendment does not require the defendant, before enacting Ordinance 216, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the defendant addresses. *City of Renton,* at 51, 106 S.Ct. 925.

The plaintiffs argue that the defendant's purpose in enacting Ordinance 216 was simply to ruin their business. In support of this contention, the plaintiffs allege that the President of the Police Jury vowed at the Police Jury's meeting to "shut down the go-go club." It is a familiar principle of constitutional law, however, that the courts will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. The Supreme Court has stated, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what

motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork. We decline to void essentially on the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it." *O'Brien,* at 384, 88 S.Ct. 1673. Thus, this court rejects the plaintiffs' argument that the Police Juror's alleged speech renders Ordinance 216 unconstitutional.

The defendant claims that the purpose of enacting Ordinance 216 was to combat the negative secondary effects associated with erotic dancing establishments. The President of the Police Jury admitted that the Police Jury did not conduct a study prior to the enactment of the ordinance to determine whether any of the feared secondary effects would materialize through the operation of adult entertainment at the Lounge. Nevertheless, the defendant claims that it based its concern about secondary effects on its experience with the operation of another club in St. Helena Parish, the TNT Club, which offered some form of erotic dancing.

Deputy Sheriff McNabb, who used to be employed by the Louisiana Alcohol and Beverage Control Board, testified about St. Helena Parish's experience with the TNT Club. The TNT Club opened initially as a bar but later expanded its operations in 1999 to include totally nude dancing. After the local sheriff complained to the ABC Board, several investigators were sent out to the TNT Club to investigate. Deputy McNabb testified that the investigators observed dancers at the TNT Club performing totally nude and at the floor level, instead of on a raised stage as was required by Section 14:16. They also observed the sale of alleged pornographic videos, and this club's owners permitted patrons to videotape the totally nude dancers as they performed. There were alle-

gations of prostitution and drug sales at the club, but the investigators apparently did not confirm these reports. The investigators arrested several of the dancers and cited the owners of the TNT Club with a violation. The club owner's license was not revoked, however. The TNT Club quit offering nude dancing after they were cited, and it is still in operation today.

St. Helena Parish's experience with the TNT Club is certainly relevant to its decision to enact Ordinance 216. Several negative secondary effects apparently resulted from the TNT Club's decision to offer erotic dancing. The dancers violated the state and local statutes regulating nude dancing by failing to wear the minimally required clothing. They failed to perform on a raised stage at least eighteen inches above the patrons. The investigators observed the sale of alleged pornographic videos at the club and saw patrons videotaping the live dancers. Although the investigators did not confirm it, there were also allegations of prostitution and drug sales at the club. All of this provided the defendant with direct evidence of the negative secondary effects that can result from erotic dancing in St. Helena Parish. It was reasonable for the defendant to conclude that nude dancing was likely to produce the same secondary effects in other drinking establishments that it produced at the TNT Club. Ordinance 216 directly furthers the valid governmental purpose in avoiding these effects by prohibiting nude dancing in drinking establishments.

In addition, Ordinance 216 is on its face a content neutral restriction that regulates conduct, not First Amendment expression. The defendant should have sufficient leeway to justify such an ordinance based on secondary effects. *Pap's,* at 298, 120 S.Ct. 1382.

■ Based on the defendant's justifiable reliance on its experience with the TNT

Club, and the fact that the ordinance is on its face content neutral, this court finds that the governmental purpose in enacting Ordinance 216 was unrelated to the suppression of expression. Under the plurality opinion in *Pap's*, then, the ordinance needs only to satisfy the "less stringent" standard from *O'Brien* for evaluating restrictions on symbolic speech. *Pap's*, at 289, 120 S.Ct. 1382. This finding is in accord with the Supreme Court's general clarification in *Pap's* that "governmental restrictions on public nudity such as the ordinance at issue here should be evaluated under the framework set forth in *O'Brien* for content-neutral restrictions on symbolic speech." *Id.*

### O'Brien analysis—

■ Under the test set forth by the Supreme Court in *O'Brien*, Ordinance 216 is valid: (1) if it is within the constitutional power of the Government; (2) if it furthers an important or substantial governmental interest; (3) if the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *O'Brien*, at 377, 88 S.Ct. 1673.

■ The first part of the *O'Brien* test asks whether Ordinance 216 is within the constitutional power of the St. Helena Parish Police Jury. The Police Jury's efforts to prevent crime and to protect public health and safety are clearly within its police powers. "The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation," *Barnes*, at 569, 111 S.Ct. 2456.

The second factor is whether the ordinance furthers an important or substantial government interest. Since crime and other public health and safety problems are caused by the presence of nude dancing establishments like the TNT Club, a ban on such nude dancing in drinking establishments would further the defendant's interest in preventing such secondary effects. *See Pap's*, 529 U.S. at 300–301, 120 S.Ct. 1382.

Ordinance 216 also satisfies the third factor, which requires that the government interest be unrelated to the suppression of free expression. As explained above, the defendant sought to combat the negative secondary effects associated with nude dancing and confirmed by St. Helena Parish's experience with the TNT Club. Furthermore, the ordinance is content neutral on its face, since it regulates conduct and does not regulate free expression.

The fourth *O'Brien* factor is that the restriction should be no greater than is essential to the furtherance of the government interest. This factor reveals the problem with Ordinance 216. The ordinance makes it unlawful for any holder of a retail or wholesale dealer license to:

"(10) Permit or allow any nude or partially nude person, dancer, host, hostess, waiter or waitress on the premises whether in the capacity of an employee, entertainers [sic], guest, invitee, patron, or otherwise."

The ordinance then states that:

"(c) For the purposes of this article, the word 'nude' shall be taken to mean a person who is less than completely or opaquely covered such as to expose to view that person's genitals and/or pubic region, all of the buttocks area or the female breast area below a point immediately above the top of the areola."

Thus, in order to comply with the ordinance, erotic dancers at St. Helena Parish drinking establishments must cover "all of the buttocks area" and the entire female breast below the top of the nipple, which is essentially a bikini.

Many publicly acceptable bikinis these days, however, do not cover the entire buttocks area or the entire breast below the top of the nipple. Many, if not most, bikini bottoms are cut steeper, higher and narrower in the rear, revealing at least some portion of the wearer's buttocks without revealing so much as to qualify as a "G-string." Similarly, many bikini tops are designed to reveal a portion of the side of the breasts or the bottom of the breasts below the top of the nipple. These bikinis, which are perfectly acceptable in modern society and fail to raise eyebrows or alert the police, would violate the terms of Ordinance 216. Furthermore, even outside the realm of bikinis, many types of female clothing that are legal and acceptable in modern society reveal small portions of the buttocks and lower parts of the female breast. Jogging shorts, short shorts (popularly known as "daisy dukes"), tube tops, and halter tops all often reveal parts that are forbidden by Ordinance 216. The ordinance prohibits such apparel not just by erotic dancers, but also by the employees and patrons of the drinking establishments. Thus, while people may wear such apparel on the streets of the parish, they must dress up more formally before they enter a bar. The bar owners would be forced to post employees at the door to reject potential customers who do not meet the parish's bar dress code.

This court is not aware of any studies, testimony, or other experience that show the wearing of "daisy dukes," tube tops, or high-cut bikinis by dancers and the general public has led to the negative secondary effects that Ordinance 216 is designed to prevent. There is also no reason to believe that simply allowing such attire in a drinking establishment will subvert otherwise law-abiding citizens and sprout crime-ridden streets.

Ordinance 216 is substantially more restrictive than the regulations that have been upheld in previous cases involving bans on public nudity and nude dancing. These previous cases either dealt with regulations permitting topless dancing but requiring the dancers to wear "G-strings," *See California v. La Rue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); or requiring erotic dancers to wear "pasties" and "G-strings," *See Pap's; Barnes; City of Newport, Kentucky v. A. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986).[1] In this case, the old ordinance that is in effect in St. Helena Parish already requires erotic dancers in liquor establishments to wear "pasties" and "G-strings." The new Ordinance 216 expands the requirement to include the coverage of the entire buttocks and the portion of the female breast below the top of the nipple. Thus, Ordinance 216 is far more restrictive than the ordinances that have been upheld in these previous cases.

In *Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993 (11th Cir.1998), however, the Eleventh Circuit upheld a statute that was as restrictive as Ordinance 216. The statute in that case prohibited nudity in drinking establishments, and it defined nudity to include the exposure of the buttocks or the lower portion of the breasts. When it reached the fourth factor of the *O'Brien* test, the Eleventh Circuit held that "the requirement that the dancers partially cover their breasts or cease to serve alcohol is certainly the least restriction possible which would still further the

---

1. Other cases have involved zoning ordinances that regulate adult entertainment establishments by prohibiting their location within a certain distance from residential zones, churches, parks, schools, etc. *See City*

*of Renton; Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Buzzetti v. The City of New York,* 140 F.3d 134 (2nd Cir.1998).

city's interest in controlling the combustible mixture of alcohol and nudity," *Id.*, at 997. This court declines to follow the Eleventh Circuit's holding in *Sammy's of Mobile,* however, for the following reasons.

The Supreme Court has made it clear that it is precisely the *de minimis* nature of the requirements of pasties and G-strings that allows them to survive constitutional scrutiny:

> "The requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic," *Barnes,* at 571, 111 S.Ct. 2456.

"Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose." *Barnes,* at 572, 111 S.Ct. 2456.

"Even if Erie's public nudity ban has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch is dropped, the dancers at Kandyland and other such establishments are free to perform wearing pasties and G-strings. Any effect on the overall expression is *de minimis,*" *Pap's,* at 293, 120 S.Ct. 1382.

"The requirement that dancers wear pasties and G-strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message," *Pap's,* at 301, 120 S.Ct. 1382.

"It also may be true that a pasties and G-string requirement would not be as effective as, for example, a requirement that the dancers be fully clothed, *but the city must balance its efforts to address the problem with the requirement that the restriction be no greater than necessary to further the city's interest,*" *Pap's,* at 301, 120 S.Ct. 1382 (emphasis added).

As a further indication that the new ordinance's restrictions are greater than are necessary to further the defendant's interest of preventing negative secondary effects, this court notes that the defendant was not fully enforcing the existing restrictions before August 28, 2001. The previous ordinance, which was superceded by Ordinance 216, provides precisely the same restrictions that were upheld in *Pap's* and *Barnes.* Section 14:16 (the old ordinance) required that the dancers in drinking establishments wear pasties and G-strings. The plaintiffs, by providing topless dancing at the Lounge, were actually violating the existing ordinance. Thus, the defendant had the ability to combat secondary effects by simply enforcing Section 14:16. Instead of enforcing the existing ordinance, however, the defendant enacted the new Section 14:43, which is substantially more restrictive and fails to meet the fourth requirement of the *O'Brien* test.

■ Based on the above analysis, this court finds that the plaintiffs are substantially likely to prove that the restrictions in Ordinance 216 are greater than necessary to further the defendant's interest in preventing the negative secondary effects of nude dancing establishments. Because the ordinance probably fails to meet the fourth requirement of the *O'Brien* test, it is substantially likely to be an unconstitutional restriction on symbolic speech, in violation of the First Amendment as applied to the States through the Fourteenth Amendment.

### Vagueness and Overbreadth

■ Ordinance 216 also appears to suffer from vagueness and overbreadth. The ordinance prohibits the presence on the premises of "any nude or partially nude person." "Nudity" is defined in the ordinance as "a person who is less than completely or opaquely covered such as to expose to view that person's genitals and/or pubic region, all of the buttocks

area **or** the female breast below the point immediately above the top of the areola," (emphasis added). Under this definition, any female person who exposes their genitals, any portion of their buttocks, **or** the bottom portion of their breast is "nude" for the purposes of the ordinance. Thus, a female person that covers their entire body except the bottom portion of their breast, or who covers their entire body except their entire buttocks, is "nude." This definition of a "nude" person leaves no room for a person to be "partially nude."

■ A statute is vague if it "fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests," *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). Ordinance 216 provides no standards for the police to judge whether a person is "partially nude." Therefore, the plaintiffs are substantially likely to prove that the ordinance is unconstitutionally vague.

■ The overbreadth doctrine "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep," *Id.* As discussed above, Ordinance 216 prohibits conduct that is clearly outside the plainly legitimate sweep of public nudity statutes, as defined in *Pap's* and *Barnes.* Taking into account the prohibition of "partially nude" persons in drinking establishments, it is clear that only persons donning full body suits are clearly safe from the application of the ordinance. Thus, the plaintiffs are substantially likely to prove that Ordinance 216 is overbroad.

### Motion for Preliminary Injunction

■ In order to prevail on a request for preliminary injunctive relief, an applicant must establish the following four factors: (1) he is substantially likely to succeed on the merits of his claim; (2) absent the injunction, there is a significant risk of irreparable harm; (3) the balance of hardships weighs in his favor; and (4) the granting of the preliminary injunction will not adversely affect the public interest. *Women's Medical Center of Northwest Houston v. Bell,* 248 F.3d 411, 419 (5th Cir.2001).

Based on the *O'Brien* analysis and the ordinance's apparent vagueness and overbreadth, this court finds that the plaintiffs are substantially likely to succeed on the merits of their claim.[2]

The second requirement is that the plaintiffs must show that, absent the injunction, there is a significant risk of irreparable harm. The Supreme Court has held, however, that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). Therefore, the plaintiffs have established a significant risk of irreparable harm.

The plaintiffs are owners and employees of the Lounge, which will be forced to forego most of its $6000 a week revenue without a preliminary injunction. If the preliminary injunction is granted, the defendant will only be forced to suffer the continued operation of this establishment, which has been providing erotic dancing for several months already. Clearly, the balance of hardships weighs in the plaintiffs' favor.

Finally, this court finds that the granting of the preliminary injunction will not

---

2. However, this court finds no merit in the    plaintiffs' procedural due process claims.

adversely affect the public interest. The testimony has shown that the negative secondary effects feared by the defendant have failed to materialize. Therefore, the continued operation of the plaintiffs' lounge will not harm the public interest during the pendency of this action.

■ Because this court finds that the plaintiffs have established the four factors required for the granting of a preliminary injunction, the court will grant their motion.

## Defendant's Motion to Dismiss

■ This matter is also before the court on the defendant's motion to dismiss. The defendant's motion argues that the plaintiffs' claims against the defendant are barred by the doctrine of absolute, legislative immunity, because the defendant was acting in a legislative capacity. Local legislators, like the defendant, are absolutely immune from liability for their legislative acts. *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* The defendant's enactment of Ordinance 216 was clearly a legislative act. Therefore, the defendant is absolutely immune from civil liability for the enactment of Ordinance 216. Furthermore, the plaintiffs will not suffer any monetary damages in this case, because this court is granting their preliminary injunction. Ordinance 216 will not be enforced against the plaintiffs unless and until this court finds against the plaintiffs in their suit for a permanent injunction. Accordingly, the plaintiffs' claims for compensatory and punitive damages will be dismissed.

■ The absolute immunity of local legislators is equally applicable to § 1983 actions seeking declaratory or injunctive relief. *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). "A private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation," *Id.,* at 732, 100 S.Ct. 1967; *citing Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). Thus, if this suit had been brought against the defendant for refusing to amend the Code of Ordinances, the defendant could successfully have sought dismissal on the grounds of absolute legislative immunity. *Id.*

■ The defendant performs more than a legislative role, however, with respect to the St. Helena Parish Code of Ordinances. The defendant has an independent enforcement authority with respect to the suspension and revocation of licenses. It can threaten to enforce and actually enforce the local law with respect to drinking establishments. If the defendant could not be proceeded against for declaratory or injunctive relief, putative plaintiffs would have to await the institution of Police Jury revocation proceedings in order to assert their federal constitutional claims. This is not the way the law has developed, and, because of its own inherent and statutory enforcement powers, immunity does not shield the defendant from a claim for injunctive or declaratory relief in this case. *See Id.,* at 737, 100 S.Ct. 1967. The defendant's motion to dismiss will be denied with respect to the claims for declaratory and injunctive relief.

■ The plaintiffs also request attorney's fees in their complaint. When the plaintiffs prevail in a § 1983 action, the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, authorizes the District Court, "in its discretion," to award them "a reasonable attorney's fee," which may be recovered from officials sued in their official capacities. *See Id.,* at 737, 100 S.Ct.

1967. Attorney's fees should ordinarily be awarded "unless special circumstances would render such an award unjust," *Id.* "Accordingly, enforcement authorities against which § 1983 judgments have been entered would ordinarily be charged with attorney's fees," *Id.,* at 738, 100 S.Ct. 1967. Although the defendant is subject to suit in its direct enforcement role, however, it is immune in its legislative role. This court cannot order an award for attorney's fees if the award is premised on the legislative actions of the defendant. *See Id.*

■ The plaintiffs' claim for injunctive relief, suspending the enforcement of Ordinance 216, is premised on the enforcement authority of the defendant. Since the plaintiffs' claim for injunctive relief might prevail, there is still an issue as to whether an award of attorney's fees is proper in this case. Therefore, this court will deny the defendant's motion to dismiss with respect to the plaintiffs' claims for attorney's fees.

The defendant also argues that this court lacks subject matter jurisdiction because the plaintiffs lack standing in this matter. This court has ruled above, however, that the plaintiffs do have standing in this matter. The defendant's motion to dismiss for lack of subject matter jurisdiction will be denied.

Accordingly, the plaintiffs' motion (doc. 1) for preliminary injunction is GRANTED.

The defendant's motion (doc. 9) to dismiss is GRANTED with respect to the plaintiffs' claims for compensatory damages and punitive damages. The defendant's motion (doc. 9) to dismiss is DENIED with respect to the plaintiffs' claims for injunctive and declaratory relief and for attorney's fees.