G.Q. GENTLEMEN'S QUARTERS, INC., Appellant,

v.

CITY OF LAKE OZARK, Missouri, Respondent.

No. WD 60087.

Missouri Court of Appeals, Western District.

Aug. 27, 2002.

Lewis Z. Bridges, Lake Ozark, for Appellant.

Richard N. Ward, Warren Steven Rives, Lake Ozark, for Respondent.

Before ROBERT G. ULRICH, P.J., PAUL M. SPINDEN and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, P.J.

G.Q. Gentlemen's Quarters, Inc., (G.Q.) appeals the trial court's judgment denying its request to enjoin enforcement of a City of Lake Ozark, Missouri, ordinance. G.Q., an establishment featuring erotic dancing, contends that the ordinance violates its rights under the First Amendment. The judgment of the trial court is reversed; the case is remanded.

### Facts

The City of Lake Ozark, Missouri (City), is a municipal corporation located within Miller County. G.Q. is a Missouri corpora-

tion in good standing with its principal place of business in Lake Ozark. G.Q. operates a business within the City that serves alcoholic beverages and presents erotic dancing for entertainment of its customers. The dancers pay G.Q. to perform and receive tips from customers as their compensation.

A separate corporation, Relaxation, Inc., owns the building that G.Q. occupies. The president of Relaxation, Inc. testified that he originally built the building in response to a request by the Mayor and City Administrator of the City in 1991. The purpose of building at the location was to house an establishment providing alcoholic beverages and erotic dance to its customers and to enhance development of an economically distressed area.

The City, acting through its Board of Alderman, adopted Ordinance No. 99–7 on April 11, 2000. Specifically, the ordinance provides *inter alia:*

It shall be unlawful for any person, firm, or corporation maintaining, owning, or operating a commercial establishment located within the City limits of the City of Lake Ozark, Missouri, where alcoholic beverages are offered for sale or may be consumed on the premises to:

1. Suffer or permit any female person, while on the premises of said commercial establishment, to expose or display any part or portion of the human female breast directly or lateral below the top of the areola there, with nothing less than an opaque covering;

\* \* \*

10. To suffer or permit any person to expose or display any portion of the anus or anal cleft.

G.Q. filed a petition on April 20, 2000, requesting injunctive relief from enforcement of the ordinance contending that the ordinance violates its rights under the First and Fourteenth Amendments of the United States Constitution. Following a bench trial, the trial court entered its judgment denying G.Q.'s request. This appeal by G.Q. followed.

### Jurisdiction

■ Although neither party has raised the issue of jurisdiction, this court has a duty to address appellate jurisdiction *sua sponte. Prosser v. Derickson,* 1 S.W.3d 608, 609 (Mo.App. W.D.1999). The Missouri Supreme Court has exclusive appellate jurisdiction in cases involving the validity of a statute or provision of the constitution of this state. Mo. CONST. art. V, § 3.

■ Claims that municipal ordinances are constitutionally invalid are not within the exclusive appellate jurisdiction of the Missouri Supreme Court. *Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907, 912 (Mo. banc 1997). While the Missouri Supreme Court may review such claims on transfer,[1] under Missouri's constitutional scheme, this court has jurisdiction to initially consider such issues on appeal. *Id.* Because this appeal involves the constitutionality of an ordinance, this court has jurisdiction to consider the appeal.

### Constitutionality of Ordinance

■ On appeal, G.Q. contends that the trial court erred in failing to issue an injunction prohibiting the enforcement of City Ordinance No. 99–7 because the ordinance must, but does not, satisfy a strict scrutiny standard of review in that it is a content-based regulation of protected conduct. Specifically, G.Q. argues that the City made no showing of substantial need for the ordinance. In the alternative, G.Q.

---

1. Mo. CONST. art. V, § 10.

contends that even if the ordinance is content neutral, it doesn't meet the less stringent intermediate scrutiny standard of review articulated in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), in that the ordinance does not further an important government interest, is directly related to the suppression of freedom of expression, and is unnecessarily restrictive.

 Although a state of nudity is not an inherently expressive condition, non-obscene nude dancing of the type at issue here is expressive conduct that falls within the outer ambit of the protection of the First Amendment. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000)(plurality opinion); *See also Id.* at 310, 120 S.Ct. 1382 (Souter, J., concurring in part and dissenting in part)(stating agreement with the "analytical approach" employed by the plurality).[2] To determine what level of scrutiny applies to the ordinance at issue, whether the regulation is related to the suppression of expression must be decided. *Id.* at 289, 120 S.Ct. 1382. If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation must only satisfy the less stringent test set out in *O'Brien* for evaluating content-neutral restrictions on symbolic speech. *Id.* If, however, the government interest is related to the content of the expression, the regulation falls outside of the scope of the *O'Brien* test and must be justified under a more demanding standard. *Id.* Thus, if a statute or ordinance regulates speech based on its content, it must be narrowly tailored to promote a compelling government interest. *United States v. Playboy Entm't Group, Inc.*, 529

U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

G.Q. contends that Ordinance No. 99–7 is a direct regulation of the content of erotic dancing. The City, however, argues that the ordinance is content-neutral because, on its face, it regulates conduct alone—public nudity in a commercial establishment. The City also argues that the ordinance is not intended to suppress expression but to prevent negative secondary effects associated with nude dancing.

 While a general ban on public nudity, by its terms, regulates conduct alone, a public nudity ban certainly has an incidental effect of suppressing the kind of erotic message G.Q. wishes to express. *Pap's*, 529 U.S. at 289, 292–293, 120 S.Ct. 1382. Where, however, the governmental purpose of such a statute or ordinance is the prevention of the negative secondary effects associated with erotic dancing establishments, that purpose is unrelated to the suppression of expression. *Id.* at 296, 120 S.Ct. 1382; *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Vaughn v. St. Helena Parish Police Jury*, 192 F.Supp.2d 562, 570 (M.D.La.2001). Thus, if a statute or ordinance was enacted for the purpose of preventing the negative secondary effects associated with erotic dancing clubs on the health, safety, and welfare of the surrounding community, the statute or ordinance would be deemed content-neutral and only intermediate scrutiny would apply. *Pap's*, 529 U.S. at 296, 120 S.Ct. 1382.

 When the government restricts speech, it bears the burden of proving the constitutionality of its actions. *Ranch House, Inc. v. Amerson*, 238 F.3d 1273,

---

**2.** Although no opinion in the *Pap's* case was joined by more than four Justices, a majority of the Court basically agreed on how these kinds of statutes or ordinances should be analyzed. *Ranch House, Inc. v. Amerson*, 238 F.3d 1273, 1278 (11th Cir.2001).

1283 (11th Cir.2001)(quoting *Playboy Entm't Group,* 529 U.S. at 816, 120 S.Ct. 1878). Thus, the government must produce some evidence that the purpose of enacting the statute or ordinance was a concern over negative secondary effects rather than merely opposition to expression. *City of Renton,* 475 U.S. at 48, 50–51, 106 S.Ct. 925; *Ranch House,* 238 F.3d at 1283; *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 661 (8th Cir.1981); *Vaughn,* 192 F.Supp.2d at 570. The government's burden, however, is not great. *Vaughn,* 192 F.Supp.2d at 570.

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*City of Renton,* 475 U.S. at 51–52, 106 S.Ct. 925.

 In determining whether the purpose of a statute or ordinance is to suppress protected speech or to prevent secondary effects, a court may examine a wide variety of materials including the text of the statute or ordinance, any preamble or express legislative findings associated with it, legislative history, and studies and information of which legislators were clearly aware. *Ranch House,* 238 F.3d at 1280. While the City claims in its brief on appeal that the purpose of enacting Ordinance No. 99–7 was to combat harmful secondary effects, nothing in the record indicated that this was the governmental purpose of the ordinance. In this case, a governmental interest of protecting the community from the negative secondary effects of an establishment that presents erotic dancing cannot be gleaned from the ordinance's preamble or express legislative

findings associated with it. Additionally, the City did not introduce any evidence of studies or information it considered on the issue in enacting the ordinance. The only evidence presented by the City regarding its purpose in enacting the ordinance was the testimony of a former member of the Board of Alderman who testified that the motivation behind her introduction of the ordinance was to regulate the amount of clothing females in commercial establishments are required to wear while performing their dance based upon moral issues. A court, however, will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive. *Pap's,* 529 U.S. at 292, 120 S.Ct. 1382; *O'Brien,* 391 U.S. at 383, 88 S.Ct. 1673. The United States Supreme Court has stated, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *O'Brien,* 391 U.S. at 384, 88 S.Ct. 1673. The testimony of the former member of the Board of Alderman, therefore, does not provide evidence of the City's purpose in enacting Ordinance No. 99–7. The City also presented the testimony of several voters who voted to approve the ordinance. While most of the voters testified that they found an erotic dancing establishment morally objectionable, some voters also testified that they were concerned about the negative effects such an establishment may have on their community. This testimony of the voters, however, did not constitute evidence of the governmental purpose in enacting the ordinance.

This court will not presume that the City enacted Ordinance No. 99–7 to prevent negative secondary effects associated with erotic dancing establishments absent any indication of such purpose. *See Ranch House,* 238 F.3d at 1282 ("We are aware of no case where a court has . . .

sustained a secondary effects argument in the absence of *any* indication that the relevant legislative body intended to ameliorate such effects."). *See also Pap's,* 529 U.S. at 290, 120 S.Ct. 1382 (where in preamble of ordinance, city council stated that it was adopting ordinance "for the purpose of limiting a recent increase in nude live entertainment within the City, which activity adversely impacts and threatens to impact on the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects."); *City of Renton,* 475 U.S. at 44, 106 S.Ct. 925 (where ordinance imposing moratorium on the licensing of any business that sells, rents, or shows sexually explicit material specifically stated that such businesses "would have a severe impact upon surrounding businesses and residences.") The secondary effects doctrine is an exception to the general rule that legislation that restricts expressive conduct is subject to the strictest scrutiny. *Ranch House,* 238 F.3d at 1282. Presuming a governmental intent of preventing negative secondary effects associated with erotic dancing establishments without any evidence of such intent would permit the exception to swallow the rule especially in light of the government's burden of proving the constitutionality of a statute or ordinance that restricts speech. *Id.* at 1283.

Because the City presented no evidence that its purpose in enacting Ordinance No. 99–7 was to prevent negative secondary effects associated with erotic dancing establishments and, thus, that the ordinance was unrelated to the suppression of expression, the City had the heavy burden of justifying the ordinance under the strict scrutiny standard. *Pap's,* 529 U.S. at 289, 120 S.Ct. 1382. The City, however, failed to show that the ordinance was narrowly

tailored to promote a compelling government interest. The trial court erred in denying G.Q.'s request to permanently enjoin the enforcement of the ordinance. The judgment is, therefore, reversed, and the case is remanded to the trial court for entry of judgment consistent with this opinion.

SPINDEN and SMITH, JJ., concur.