**Ira VAUGHN and Bobby Vaughn D/B/A Oak Ridge Lounge and Christy Barber**

v.

**ST. HELENA PARISH POLICE JURY**

**No. CIV.A.01–CV772.**

United States District Court, M.D. Louisiana.

Oct. 17, 2002.

---

Aidan C. Reynolds, Aidan C. Reynolds, Trials & Appeals, Baton Rouge, LA, for Plaintiffs.

Scott G. Vincent, New Orleans, LA, for Defendant.

## RULING AND ORDER

BRADY, District Judge.

This matter is before the Court on a motion to dissolve an existing preliminary injunction filed by Defendant St. Helena Parish Police Jury (doc. 31). As a preliminary matter, the Court also must consider a motion *in limine* and to dismiss due to spoliation of evidence filed by St. Helena (doc. 44). The parties have briefed these matters and the Court heard oral argument on October 15, 2002. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert their claims under 42 U.S.C. §§ 1983, 1985, and 1988.

## FACTUAL BACKGROUND

The Court provided an extensive discussion of the factual setting of this case in its ruling of December 6, 2001. None of these factual matters have changed importantly as of the presentation of this motion, so the Court adopts the findings published in *Vaughn v. St. Helena Parish Police Jury*, 192 F.Supp.2d 562, 565–67 (M.D.La.2001). The only developments are the following. (1) St. Helena Parish has adopted a limiting construction of its ordinance that treats the phrase "partially nude" to be coextensive with the term "nude" as it is defined in the ordinance; (2) The Fifth Circuit has since released two opinions that relate to the law governing this case; and (3) Sometime on September 15th, 2002 the Oak Ridge Lounge burned to the ground. The ruling below discusses the limiting construction and the new Fifth Circuit jurisprudence at length. The facts behind the fire are not relevant to the resolution of this motion; the ruling discusses the import the fact of the fire has on whether the case is now moot.

## PROCEDURAL BACKGROUND

On September 14, 2001, the Plaintiffs sought a declaratory judgment invalidating St. Helena Parish ordinance 216, including a permanent injunction against its enforcement. They requested a preliminary injunction to stop the Parish from enforcing the ordinance until this litigation terminated. On December 6, 2001, this Court issued a preliminary injunction. That order held that the Plaintiffs were substantially likely to prove at trial that the ordinance, as drafted, violates the fourth prong of the *O'Brien* test for incidental restrictions on speech. It also held that they were likely to prove that the ordinance is overbroad and vague.

The Parish now moves to dismiss or, alternatively, to exclude evidence that would support four propositions. According to the Parish the Court should dismiss the entire action because the Vaughns failed to keep records that would enable

the Parish to verify: (1) how much the Vaughns spent to buy the land and build the Oak Ridge Lounge; (2) the degree to which sales increased after the Lounge started offering erotic dancing as an attraction; and (3) whether dancers are separated from patrons at all times by at least three feet. Failing that remedy, the Parish seeks to exclude evidence that would rebut its own evidence that the Vaughns spent vastly less than the $120,000 they claimed on opening costs, that their sales merely doubled after they began to offer erotic dancing, and that their dancers danced topless and allowed patrons within three feet. Exclusion is an appropriate remedy, it claims, because the Vaughns had a duty to maintain evidence that might be relevant at trial.

In light of two recently released Fifth Circuit decisions, the Parish also moves this Court to dissolve the preliminary injunction. It claims that these recent cases undermine the reasoning of this Court's earlier ruling and that, as a consequence, the Plaintiffs are no longer substantially likely to prevail at trial.

## STANDARD AND BURDEN

■ The district courts apply the same standards in reviewing a preliminary injunction under a motion to dissolve as they do in deciding whether to grant one in the first instance. *See Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir.)(reversing the district court for abusing its discretion by granting and then refusing to dissolve a preliminary injunction because there was no showing of irreparable harm at either stage). District courts in this circuit follow this practice. *See, e.g., Periodical Publishers' Service Bureau, Inc. v. Keys,* 1992 WL 298003, *3 (1992) ("Considering the record in its entirety, as well as the motions, memoranda in support, and docu-

ments annexed hereto, which are discussed herein, the Court finds that the preliminary injunction should remain in effect."); *John Carlo, Inc. v. Corps of Engineers of U.S. Army, Fort Worth Div.,* 539 F.Supp. 1075, 1088 (N.D.Tex.1982) ("The Court after carefully considering the evidence is of the opinion Carlo has failed to prove that the treatened injury to it outweighs the injury to Servidone or the government which may be caused if the injunction is continued."). Consequently, the Court reconsiders whether Plaintiffs remain substantially likely to prevail at trial.

## ANALYSIS

### A. Mootness

As noted above, on the night of September 15, 2002, the Oak Ridge Lounge burned to the ground. It is no longer operating, but the plaintiffs indicate that they intend to reopen. Because the Plaintiffs are not currently operating and therefore cannot be restricted by the ordinance if it is enforced, this Court must face the question of mootness. The fire occurred weeks after the parties submitted their briefs on this matter. At oral argument they agreed that the matter is not moot. Irrespective of that fact, this court must consider the matter in some detail. The Fifth Circuit has held that "a federal court is obligated to raise the issue, *sua sponte,* if the facts suggest mootness notwithstanding the silence of the parties with respect to the issue." *Dailey v. Vought Aircraft Co.,* 141 F.3d 224, 227 (1998) (*citing North Carolina v. Rice,* 404 U.S. 244, 245, 92 S.Ct. 402, 403–04, 30 L.Ed.2d 413 (1971)).

As it turns out, the Supreme Court recently addressed a similar situation. In *City of Erie v. Pap's A.M.,*[1] the Supreme

---

1. 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

Court held that the fact that an erotic dance club had gone out of business did not moot a case challenging an ordinance restricting nude dancing. *Pap's*, 529 U.S. at 288–89, 120 S.Ct. 1382. The setting in that case was somewhat different because the operator of the dance club prevailed in the Supreme Court of Pennsylvania and the plaintiff sought to have the case declared moot after prevailing. *Id.* at 288. The Pennsylvania Court ruled that Erie, Pennsylvania's public nudity ordinance was unconstitutional. *Id.* After that ruling, the operator of the dance club closed its doors. The Supreme Court noted that the City retained an interest in enforcing its statute, which, under the decision of the Pennsylvania Supreme Court, it could not do. *Id.* The Supreme Court also noted, however, that "Pap's still has a concrete stake in the outcome of this case because, to the extent Pap's has an interest in resuming operations, it has an interest in preserving the judgment of the Pennsylvania Supreme Court." *Id.*

■ In this case the interest is even more substantial. In *Pap's*, the Supreme Court had no indication that the dance club operator intended to reopen. In fact, he had closed down voluntarily and, at the age of 72, seemed to be contemplating retirement. *Id.* Here, the fire and consequent burning of the Oak Ridge Lounge is so recent that it is unlikely Plaintiffs have

had a chance fully to evaluate their situation. One thing is certain, however: If this Court dissolves its injunction at this juncture, the option of rebuilding its business is decidedly more dicey. Unless or until Plaintiffs decide to leave the Parish or quit the erotic dancing business, Plaintiffs have a concrete interest in the outcome and the case is not moot.

## B. Motions Regarding Evidence

The Parish seeks dismissal of this action on the ground that the Vaughns have failed to provide key evidence it is their duty to provide. It cites several cases that stand for the proposition that dismissal is an appropriate sanction when a plaintiff loses or destroys relevant evidence.[2] The key word in the proposition is "relevant." Alternatively, it seeks exclusion of any evidence to challenge its own version of the facts on these claims. Both these motions are without merit.

The Parish offers its own evidence regarding various claims. First, it argues that the Vaughns did not spend $120,000 to build the Oak Ridge Lounge, as they have asserted under oath. To undermine this approximation, the Parish points out that the Vaughns can only produce construction-related receipts for $23,238.35 and that they admit they cannot prove that they spent more than $43,000.[3] The Par-

---

**2.** *See Ratliff v. City of Gainesville*, 256 F.3d 355 (5th Cir.2001); *Silvestri v. GMC*, 271 F.3d 583 (4th Cir.2001); *Bachmeier v. Wallwork Truck Centers*, 544 N.W.2d 122 (N.D.1996); *Patton v. Newmar Corp.*, 538 N.W.2d 116 (Minn.1995); *Stubli v. Big D Intern. Trucks, Inc.*, 107 Nev. 309, 810 P.2d 785 (1991); *Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911 (1987).

**3.** The difference between these two figures appears to result from the fact that the Parish deducted any receipts it could attribute to operating, rather than construction, expenses. The Court is not certain why the Parish makes

this distinction. Ira Vaughn testified at the hearing on the preliminary injunction regarding his expenses as follows:

> Q: How much money did you expend in purchasing the property?
> A: Well, $50,000 on the property and the house that I bought to get the property and move on.
> Q: Okay. So when you purchased the property, it was just a home and some land, right?
> A: Right.

ish never makes clear why it thinks so, but it claims that the court should either dismiss the case or refused to allow the Vaughns to introduce contrary evidence at trial.

The Parish also offers its own evidence regarding the degree to which the Vaughns business increased after the Lounge started offering erotic dancing. According to the Parish, the Vaughns claim that their business quadrupled is too generous. The Parish introduced a report of some sort of profits that indicates a doubling of business between August and September of 2001. After that point, sales remained higher than before the dancing started, but dropped substantially compared to September. The Parish also points out that the Vaughns have done nothing in the way of providing their own records to clarify the discrepancy.[4] These evidentiary problems, too, argues the Parish, warrant dismissal or exclusion of evidence.

■ These arguments are unavailing for a very simple reason: these facts are irrelevant to this case. Precise figures for expenditures and profits could be important to this case for establishing (1) whether the Vaughns have standing or (2) the amount of compensatory damages to which they are entitled. This Court has already ruled that the Vaughns have standing. While it is true that the Court adverted to the figures that the Vaughns originally provided to decide that issue, the Court would reach the same conclusion even if the parties stipulated to the figures the Parish now provides. The plaintiffs have standing as long as they incurred an "injury in fact" that is "fairly traceable" to defendant's actions, and the injury "will likely... be redressed by a favorable decision." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir.2001)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Vaughns have shown, now with the aid of the Parish, that they invested money in the Oak Ridge Lounge after researching the controlling law at the time of their move. They have shown that their business increased after they began to offer erotic dancing. Consequently, they have shown an injury in fact. The other elements of standing are not in question. Nor need the Parish worry about compensatory damages, since it never enforced

---

Q: The bar itself, the building, which, you know, houses the bar, if you will, was not there?

A: No, it was not there.

Q: Okay. Now, after you purchased the property, did you spend any money to build the bar, the premises itself?

A: Yes. With the—I sold $45,000 worth of property. I invested all that in the building, plus some ·cash, plus I borrowed $13,000.

Q: All total, how much money have you expended, approximately? I know it's hard to—

A: Approximately, probably $170,000.

**Transcript of Preliminary Injunction Hearing** at 8–9. Mr. Vaughn appears to be testifying about all his start-up costs, not simply the cost of construction. Initial outlay for opening a business can be a substantial sum. Perhaps the Parish feels that operating costs that cover such things as liquor should be excluded from the total start-up costs because, after operating for a year, the Vaughns would have recouped that amount through sales.

4. The Parish fails to note two relevant facts in judging the accuracy of the Vaughns' initial representations to this Court. First, the Vaughns started to present erotic dancing in the middle of August of 2001. If, as they claim, their sales increased immediately then one seeking to compare pre-dancing with post-dancing revenues would look to the figures in July and September, since August was a hybrid. Second, the Vaughns testified in October when their only information regarding the increase in business came from the second half of August and September, when it appears that their business did quadruple.

the ordinance against the Vaughns. Moreover, the Court dismissed the Vaughns' claims for compensatory damages in the same ruling that granted the preliminary injunction. *Vaughn v. St. Helena Parish Police Jury,* 192 F.Supp.2d 562, 576 (M.D.La.2001). Consequently, there is no need to know the precise amount of earnings at the Oak Ridge Lounge. All the cases cited by the Parish granted dismissal or motions *in limine* because *relevant* evidence was lost or destroyed. We do not face that circumstance in this case.

■ The Parish also argues for dismissal and exclusion based on the fact that the Vaughns have not been forthcoming with requests to provide information about their past and present employees. The Vaughns admit that their record-keeping is atrocious. They do not pay their dancers—who make their living off tips—and so do not keep employment records. They use an independent contractor to provide their security. Only their bartenders are on staff, and the Vaughns do not have the records they should be keeping on these employees. If the Parish could contact these people, it would use their testimony to establish that the performers appeared without pasties and that the patrons did not stay three feet away from the dancers at all times, both in violation of the ordinance that controlled before the new ordinance repealed it. It is not clear to the Court why the Parish needs to present such testimony. In the first place, the earlier opinion of this court noted that the dancers were appearing without pasties. Moreover, the Parish has presented affidavits of witnesses who have attended the Lounge and who claim that there were violations of the former ordinance. There is a more fundamental problem: Evidence that the Oak Ridge Lounge countenanced violations of the former ordinance is irrele-

vant to the question whether the new ordinance is unconstitutional. The evidence would, perhaps, have been better presented to the St. Helena Parish Police Jury before it repealed that ordinance by enacting the stricter one. Consequently, the motion to dismiss for spoliation of evidence and the motion *in limine* are denied.

## C. Overbreadth

The Parish argues that the Court should dissolve its preliminary injunction because the Fifth Circuit's *Baby Dolls Topless Saloons, Inc. v. City of Dallas* decision,[5] decided six months after the preliminary injunction issued, undermines the Court's overbreadth analysis. Specifically, the Parish argues that *Baby Dolls* stands for two new propositions, that:

(1) On facial challenge by one legitimately within the scope of a piece of legislation, that legislation cannot be held overbroad based on mere hypothetical scenarios involving its unconstitutional application, unless the overbreadth is substantial; and

(2) A piece of legislation that might otherwise be overbroad should be upheld if the administering authority has proposed a limiting construction that would stop any overbroad application from occurring.

The Parish argues that these propositions changed the relevant law and that correct application of these propositions to this case should result in a decision upholding the constitutionality of the St. Helena ordinance. Since the Vaughns must establish that they are substantially likely to prevail on their constitutional challenge at trial to warrant the injunction, and since post-*Baby Dolls* they are no longer substantial-

5. 295 F.3d 471 (5th Cir.2002)

ly likely to prevail, the Court should dissolve the injunction.

In its December 6, 2001 order granting a preliminary injunction, the Court held that plaintiffs were substantially likely to prove that the St. Helena ordinance is constitutionally defective because it is vague and overbroad. The basis for this ruling was the use of the undefined phrase "partially nude." The ordinance prohibits the presence, within an establishment that sells liquor, of any person who is "nude or partially nude." The ordinance defines "nudity" as "a person who is less than completely or opaquely covered such as to expose to view that person's genitals and/or pubic region, all of the buttocks area or the female breast below the point immediately above the top of the areola." The Court noted that this definition, because its conditions are *dis*junctive, entails that a woman who covered her entire body except the bottom portion of her breast would be nude. If such attire constitutes nudity, there is no room for partial nudity. Because the statute provides no standards for the police to judge whether a person is partially nude under the statute the Court held that the ordinance is unconstitutionally vague.

Similarly, the Court held the same language to be unconstitutionally overbroad. The plaintiffs were likely to be able to challenge the ordinance on its face for overbreadth, the Court wrote, because the "impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." The scope of "partially nude" is potentially so broad under the ordinance that it is likely to implicate a great number of persons who find themselves in drinking establishments, both employees and consumers.

The Parish objects because this Court did not consider whether the ordinance was substantially likely to be applied to constitutionally protected acts. As *Baby Dolls* newly establishes, an ordinance should not be struck down on its face due solely to imaginative flights of fancy. Statutes are imperfect; if the objector is not herself constitutionally protected, courts should not concoct mythical innocent dissenters. To be held unconstitutional on its face the threat of overbroad application must be real and substantial. This, the Parish argues, the Court did not do.

The Parish urges that *Baby Dolls* also establishes that, even if the ordinance is overbroad, a limiting construction can save it from that malady. The Parish has taken such a step. According to an affidavit submitted by Clifton T. Speed, an Assistant District Attorney for the St. Helena Parish District Attorney's Office whose job it has been to advise the St. Helena Parish police jury on legal matters for the last twelve years, the police jury "does not and will not interpret the Ordinance [No. 216] as prohibiting the wearing of jogging shorts, bikini bottoms and tops, short shorts, tube tops, or halter tops in establishments where alcohol is served." By affidavit, Harold Ray Smith, President of the St. Helena Parish Police Jury, confirms that that institution will observe this limiting construction. As a consequence, the Parish argues, the statute is not overbroad.

According to the Parish, these two features of the case make it precisely analogous to the situation in *Baby Dolls*. There, the Fifth Circuit rejected the claim that a similar city ordinance was overbroad. The enactment in question was a zoning ordinance which classified some businesses as "sexually oriented businesses." The ordinance required any that any such business be located at least 1,000 feet from any churches, schools, residential areas, and parks. The City of Dallas

changed the ordinance terms so that any place of business that allowed women regularly to appear dancing in less than a full bikini would qualify as a sexually oriented business. In this respect, the statute is similar to the one at issue in this case. Baby Dolls Topless Saloons sued because whereas once it could operate with women wearing bikini bottoms and pasties, under the new ordinance it would be forced to increase its dancers' clothing, shut down, or move to another location. It challenged the statute as overbroad but the Fifth Circuit rejected this suggestion.

The Fifth Circuit specifically refused to allow the overbreadth objection that as written the statute could apply to mainstream movie theaters and video stores. Noting that it is a radical step to invalidate an ordinance on its face when the person who brings suit is not the kind of person whose legitimate rights the ordinance restricts, the Fifth Circuit considered both the likely interpretation of the ordinance and the construction of the ordinance provided by the City Attorney. The questioned ordinance defines adult theater as "a commercial establishment where, for any form of consideration, films, motion pictures, video cassettes, slides, or similar photographic reproductions are *regularly* shown that are *characterized* by the depiction of" specified anatomical areas. The Court held that there was no real likelihood that enforcement officials would interpret that provision in such a way that it would be applied to mainstream theaters because even when modern movies do focus on the sexually explicit, the movies are not "characterized by" the depiction of sexuality. Moreover, theaters that show such movies do not regularly show them. Absent that likelihood, the sweep of the ordi-nance did not implicate a substantial amount of protected activity compared to the activity within the ordinance's legitimate scope.

The Fifth Circuit also emphasized that the City Attorney explicitly adopted a comparable construction of the ordinance. In a memorandum to the Chief of Police, the City Attorney wrote that businesses "which feature adult magazines, NC–17 or R-rated video tapes, and NC–17 or R-rated motion pictures" should not be classified as sexually-oriented businesses for that reason. Because the law was "fairly susceptible" of the proposed construction, the Court upheld the law against the facial challenge.

The Parish argues that the same result is compelled in this case. There is no substantial likelihood that local law enforcement officers will use the statute as written as a basis for unconstitutional deprivations of liberty. The police will not shut down or fine bars whose patrons arrive scantily-clad. Were there any doubt of that claim, the Parish has adopted a limiting construction that will preclude such enforcement. Consequently, the Parish argues, *Baby Dolls* confirms that Plaintiffs are unlikely to prevail on their constitutional claims and the preliminary injunction must be dissolved.

The St. Helena ordinance remains overbroad. The first matter that bears noting is that the law as applied by the Fifth Circuit is by no means new. The supposedly newly minted principle of law is this: "[W]here conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." [6] The quotation comes from *Baby Dolls,* which there

---

6. *Baby Dolls,* 295 F.3d at 482. The Parish leaves off the final clause of this quotation, a tactic this Court disfavors, especially when the apparent meaning of the sentence is so radically altered.

quotes *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The principle is well-established. And the principle is also recited in this court's earlier ruling: "The overbreadth doctrine 'permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law *are substantial* when judged in relation to the statute's plainly legitimate sweep.'" *Vaughn v. St. Helena Parish Police Jury,* 192 F.Supp.2d 562, 575 (M.D.La.2001) (quoting *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999))(emphasis supplied). Because *Baby Dolls* does not establish any new principle of law and because this Court earlier cited to that very principle, the Parish would more appropriately have timely appealed to the Fifth Circuit Court of Appeals at the termination of this lawsuit than sought what is essentially a motion to reconsider from this court.

Even setting these procedural and interpretive matters to one side, *Baby Dolls* is not so analogous to this case as the Parish wants to believe. In this case the Parish has enacted a statute that clearly defines as nude any woman who exposes some portion of one of her breasts below the point just above the areola, even if she exposes nothing else. If she does so while in a place of business that sells alcohol, there has been a violation. It is also a violation if she walks into a bar while "partially nude." That key phrase is left undefined. The Parish assures the Court that "partially nude" from here on means "nude," which is fitting since "nude" under the ordinance apparently means "partially nude." The Parish also swears that it will not enforce the statute as written against "daisy-duke"-wearing bar patrons, all this despite the plain meaning of the ordinance.

The case in *Baby Dolls* is cleanly distinguishable. There the ordinance had no similar problem with the definition of "partially nude." The Dallas ordinance defined "semi-nudity" as "a state of dress in which clothing covers no more than the genitals, pubic region, buttocks, and areolae of the female breast." There is no interpretive room within this definition, unlike in the instant case. At any rate, the supposed overbreadth under the Dallas statute concerned the possibility that mainstream movie theaters and video stores would be prosecuted under a provision that defined an "adult motion picture theater" as "a commercial establishment where, for any form of consideration, films, motion pictures, video cassettes, slides, or similar photographic reproductions are regularly shown that are characterized by the depiction or description of" specified anatomical areas, which are defined as "human genitals, pubic region, or pubic hair," "any buttock," or "any portion of the female breast or breasts that is situated below a point immediately above the top of the areola." *Baby Dolls,* 295 F.3d at 477–78. The Fifth Circuit thought that the terms "regularly shown" and "characterized by" made it clear that the ordinance could not properly apply to a mainstream theater or video store without precluding the possibility. These businesses may occasionally cross the line of good taste recognized in the ordinance, but would not likely feature performances "characterized by" a focus on the offending body parts. *Id.* at 483. Moreover, even if such a performance did occur at some time, these mainstream venues would not likely feature them "regularly." *Id.* Consistent with this view, the City Attorney had published an interpretation of the ordinance that directed police not to apply it to businesses that "feature adult magazines, NC–17 or R-rated video tapes" or movies. *Id.* The Fifth Circuit accepted this construction because it was a fair rendering of the meaning of the ordinance. *Id.*

■ The present case is clearly different. The St. Helena ordinance is not "fairly susceptible" of the proposed narrowing construction. In fact, that construction is counterintuitive bordering on cockamamie. The ordinance already defines nudity as partial nudity, which is certainly within the police jury's authority, other things being equal. Informed that the Court finds it likely that Plaintiffs will prove that the statute is overbroad because of the term "partially nude," the Parish rejoins that it will solve that problem by interpreting "partially nude" to mean "nude." It further promises that it will not use the ordinance to attack citizens who dress according to modern—admittedly looser—standards. These are not acceptable responses. A poorly-written statute can be rewritten if the public and legislative wills abide. Though courts may—and should—interpret enactments to survive phantasmagoric constructions, they should not rescue enactments that are beyond salvation. Without the proposed construction, the common-sense meaning of the statute is that bar and restaurant patrons must carefully consider their attire before leaving home. What is acceptable on prime-time television or on the public streets may be forbidden at the local pub. While the term "nudity" clearly forbids St. Helena citizens to wear dresses by Versace to dinner at restaurants that serve alcohol, there is no telling what is forbidden by the term "partially nude." The only common-sense interpretation—if "partially" means "partially"—is that it violates the statute to display part of a buttock, areola, breast bottom (or lower side), or pubic region. There is no ambiguity; there is only vagueness and overbreadth.

Legislative enactments perform duties beyond providing to law enforcement officers the tools to elicit conformity with community standards. Ordinances, we imagine, also put the citizens on notice as to their own duties. Proper notice allows citizens to avoid conviction and to voluntarily comply. To avoid constitutional defect for overbreadth, an enactment and its construction must respect both of these functions of the law. That is why a statute should be "fairly susceptible" of its proposed construction. Unlike the ordinance in *Baby Dolls,* this ordinance is not. Politicians may assert that " 'black' means 'white,' " that " 'love' means 'war,' " and that " 'partially nude' means 'nude,' " but such obfuscation should, insofar as possible, be limited to toothless rhetoric and expunged from enforceable and possibly chilling legislation.

## D. Not Greater than Essential Analysis

The Parish also argues that the Fifth Circuit's *Baby Dolls* and *LLEH, Inc. v. Wichita County, Texas*[7] opinions undermine this Court's earlier reasoning on the question whether the ordinance is too restrictive under the fourth prong of the *O'Brien* analysis. Under that test an otherwise valid content-neutral restriction that seeks to regulate the secondary effects of sexually-oriented expression violates the First Amendment if the limitations it imposes are greater than essential to achieve the government's interest. *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In the opinion granting a preliminary injunction to Plaintiffs, this Court held that they were substantially likely to prove that the restriction went too far. That ruling noted that the Parish had relied on no studies to decide upon the appropriateness of the ordinance and that the Parish already had in place a constitutionally sound ordinance

---

7. 289 F.3d 358 (5th Cir.2002).

that it never tried to enforce to control the secondary effects of the operation of the Oak Ridge Lounge. The Parish argues that the law governing this case in the Fifth Circuit has now changed.

The Parish urges this Court to recognize that *Baby Dolls* now allows localities to require erotic dancers in drinking establishments to wear full bikinis. If it does so, it is by implication only, since *Baby Dolls* concerned a land use restriction only. In any event, this Court is not convinced that *Baby Dolls* allows a "full bikini" requirement in all instances, even when the challenged ordinance does involve a land use restriction.

The *Baby Dolls* opinion upheld a Dallas ordinance which expanded the definition of "sexually-oriented business" to include, *inter alia,* erotic dance clubs whose dancers wear less than full bikinis. Dallas sought the expansion because it was frustrated that such clubs had continually played along the margins of the law, in its earlier forms, by adjusting their dancers' attire in ways that did not resolve the city's worries about the secondary effects of these businesses. Unable suitably to force the clubs to move to more appropriate locations within the city, Dallas passed a broader ordinance. The ordinance does not outright restrict nude dancing. Instead, it redefines "sexually-oriented business" and directs businesses that fall under the definition to operate at a wholesome distance from schools, parks, churches, and residential neighborhoods. Faced with the new ordinance, these clubs and other places of business had the following choice: (1) require performers to wear full bikinis, (2) close down, or (3) relocate to another location.

The Fifth Circuit held that the city was not required to show that the full bikini requirement would in fact relieve the secondary effects of the businesses. Instead, it held that the city need only establish that "the City's evidence demonstrates a *link* between its interest in combating secondary effects and the Ordinance." *Baby Dolls,* 295 F.3d at 481 (emphasis in original). The Court held that this standard was met, stating:

> The Ordinance was enacted, in part, because the City had found that, through Chapter 14, entities that were, in effect, SOBs [sexually-oriented businesses] were avoiding that classification; and that concentrated SOBs "continue to contributed to . . . an increase in criminal activities in the surrounding community." Among other relied-upon data, the 1997 Malin Study supports that increased-criminal-activities finding. From January 1993 through March 1997, there were 396 arrests for sex crimes ("Rape, Prostitution/Commercial Vice[,] and other Sex Offenses") in the study area compared to 133 such arrests in one control area (containing two SOBs located approximately a half-mile apart) and 77 such arrests in another control area (containing no SOBs).

*Id.* Highly relevant to this Court's determination is the fact that the ordinance upheld in *Baby Dolls* was the City's second crack at imposing it. In 1993, Dallas passed similar amendments but those were stricken by the district court in a decision upheld by the Fifth Circuit. *MD II Entm't Inc. v. City of Dallas,* 935 F.Supp. 1394 (N.D.Tex.1995), *aff'd* 85 F.3d 624 (5th Cir.1996). In that case, the district court noted that "no evidence indicates that the drafters of the 1993 amendments relied upon any studies indicating [their] necessity or effectiveness," and that "no evidence indicates that a requirement that dancers wear bikini tops instead of pasties will reduce deleterious secondary effects." *Id.* at 1397–98. The Fifth Circuit affirmed in a one paragraph *per curiam* opinion, stat-

ing that it agreed with the district court's finding of no evidence. *See Baby Dolls* 295 F.3d at 477 (quoting its earlier unpublished opinion, No. 95–10322, 1996 WL 255246 (5th Cir. 30 Apr. 1996)).

What had changed between 1996 and 2002 is that Dallas had acquired evidence that the deleterious secondary effects continued under the pasties and G-string requirement *and* that Dallas had gained considerable experience with the dilatory tactics of the businesses it sought to regulate. These two facts operated to form a sufficient link, first, between the businesses and their secondary effects and, second, between the governmental goal and its chosen means. Faced with a continuing incidental crime problem, the City decided again to amend the ordinance. Faced with questionable adherence to former statutes, the City decided to take more invasive action that would unquestionably impact those businesses in the event that they decided to remain in the areas the government sought to protect. It is only in this setting that the Fifth Circuit endorsed means that have otherwise been found too restrictive.

The St. Helena Parish acted in a decidedly less reasonable manner, as this Court noted in its earlier ruling. At the time that the Oak Ridge Lounge opened for business, St. Helena had an operating statute that required erotic dancers to wear pasties and G-strings. Rather than enforce that ordinance, the police jury rapidly enacted a more restrictive law. Unlike Dallas, the Parish had no reason to believe that its existing ordinance would not do the job. It is a puzzling fact that the Parish complains repeatedly to this Court that the Lounge has always violated that earlier ordinance. The Lounge denies this charge. In any event, the Parish's case for a more restrictive ordinance would be much stronger had it taken this claimed

problem into its own hands at the beginning and discovered that the earlier ordinance was ineffective. It did not do this.

Nor, as this Court also noted, did the Parish rely on any evidence that the terms of its restriction were even reasonably necessary to combat the secondary effects of the Lounge's business. *Pace* the Parish's claims, *Baby Dolls* does not relieve it of having some basis for its restriction. According to the Fifth Circuit, applying the standard in *Renton,* the government must establish that it has a reasonable belief that the restriction is suitably crafted to achieve the government objective. In *Baby Dolls,* Dallas forged that link by conducting a study on secondary effects and by establishing that their continued operation required further action. The businesses' recalcitrance operated to make a broader restriction necessary. The Parish demonstrated no similar link. It had an acceptable ordinance, but failed to enforce it. In failing to enforce that ordinance, it extinguished any possibility that it could show it needed a "full bikini" requirement. Its only support for needing the restriction originates in its experience with a club that was in flagrant violation of the earlier ordinance. That club not only provided topless dancing, but also fully nude dancing. It is revealing that the Parish managed to shut down the earlier club by enforcing earlier the ordinance. This experience clearly does not implicate businesses operating within the bounds of the previous ordinance. In fact, it supports the earlier ordinance as a fully effective means to achieving the government's end.

█ The same considerations convince this Court that *LLEH* has neither altered the constitutional landscape nor changed the likely outcome in a trial on the merits of this case. The key purported change under *LLEH* is that an incidental burden

on speech is acceptable "so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Memo Supporting Mot. to Dissolve Prelim. Injunction at 14 (quoting *LLEH*, 289 F.3d at 367 quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L. Ed.2d 536 (1985)). As the history of the quotation reveals, this principle is not new. It would have been error for this Court to have ignored the principle even before the Fifth Circuit released *LLEH*. The Court is convinced, upon reviewing its earlier decision, that it did not fail to take *Albertini* into account. In fact, the earlier ruling noted that there was an earlier G-string and pasties requirement, that the Parish never tried to enforce it, and that the Parish relied on no studies to support the need to increase its restriction. The earlier ruling, then, held that the Plaintiffs were likely to be able to prove that the Parish's interest in curbing the unwanted secondary effects of erotic dancing would not be achieved less effectively by the G-string and pasties ordinance that came before the full bikini ordinance. If the earlier ordinance was sufficient, then the greater restriction is greater than essential.

Based on the above analysis, the Court finds that despite *Baby Dolls* and *LLEH*, the plaintiffs remain substantially likely to prevail at trial under the *O'Brien* test. Consequently, the motion to dissolve the preliminary injunction on this ground is denied.

### E. Unclean Hands

 Finally, the Parish argues that the Plaintiffs should not benefit from injunctive relief because certain of their activities make it clear that they are not entitled to it. The Parish urges that only one who comes to the courts with "clean hands" should benefit from equitable relief. The Parish claims that the Vaughns have been less than forthcoming with information regarding their past and present employees. It also claims that they allowed completely topless dancing and contact between dancers and patrons in the Oak Ridge Lounge. The Court is not convinced by the evidence presented by the Parish that the injunction should be dissolved. For the most part, the Parish's claims seem simply mean-spirited. For example, it points out that the Plaintiffs claimed in court submissions to have spent $50,000 on their property. Meanwhile, the Parish breathlessly reveals, the title transfer document shows that they actually spent only $45,000. This kind of quibbling is not worth the Court's time. The Court has already noted that it appears that the dancers sometimes danced without pasties and that such was a violation of the ordinance existing before the ordinance whose enforcement is now enjoined repealed it. The doctrine of unclean hands allows a court to bar recovery when a party asserting an equitable claim against another can be shown to have engaged in fraud or bad faith behavior with that person. *Alcatel U.S.A., Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 796 (5th Cir.1999). Even if the dancers at the Oak Ridge Lounge performed topless, this is not the sort of behavior the doctrine is meant to address. Moreover, the person claiming the benefit of the doctrine must prove she was injured by these unsavory acts. *Id.* Even if the Parish was injured by nudity, it had a remedy for that injury—a statute that it replaced. The unclean hands doctrine does not reach supposed bad acts that are collateral to the action before the court. *Id.* That is the situation in this case. Even the evidence regarding the Oak Ridge Lounge profits and construction expenses are irrelevant beyond proving that there was an injury in fact. This quarrel, too, is

outside the reach of unclean hands. Seeing no reason to dissolve the injunction based on the accounting troubles of a small business or the clothing habits of its performers, the motion to dissolve the preliminary injunction is, on that basis as well, denied.

## CONCLUSION

For the reasons stated above, the motion to dismiss for spoliation of evidence, the motion *in limine* to exclude evidence (both doc. 44), and the motion to dissolve the preliminary injunction against St. Helena Parish police jury (doc. 31) are **DENIED.**