**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 00-51009**

---

**PUBLIC CITIZEN, INC.; GRAY PANTHERS PROJECT FUND;
LARRY DAVES; LARRY J. DOHERTY; MIKE MARTIN;
D.J. POWERS; VIRGINIA SCHRAMM,**

**Plaintiffs-Appellants,**

**versus**

**ELTON BOMER, Secretary of State,**

**Defendant-Appellee.**

---

**Appeal from the United States District Court
for the Western District of Texas
(A-00-CV-218-JN)**

---

November 26, 2001

Before KING, Chief Judge, BARKSDALE, Circuit Judge, and SCHELL, District Judge[1].

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this challenge to Texas' system for financial contributions to, and solicitation by, its state judges for judicial elections (Plaintiffs claim the system presents an unconstitutional *appearance* of impropriety), we must address, *inter alia*, whether Plaintiffs have standing — whether, in order to bring this action in federal court, they allege a sufficient "injury" for this to be a "case" for purposes of Article III, § 2, of the United

---

[1]United States District Judge of the Eastern District of Texas, sitting by designation.

States Constitution ("The judicial Power shall extend [,*inter alia*,] to all Cases ... arising under this Constitution, [and] the Laws of the United States...."). This action was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("failure ... to state a claim upon which relief can be granted") and, in the alternative, as being non-justiciable because it presents a political question. We **AFFIRM**, but do so through another basis for non-justiciability, one described above and raised — but not addressed — in district court: the standing doctrine.

I.

Pursuant to 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment, and seeking declaratory and injunctive relief, Plaintiffs challenge Texas' judicial election system. They maintain the system — which allows large financial contributions to, and personal solicitation by, Texas state judges — creates an unconstitutional appearance of impropriety.

Texas state judges are elected. TEX. CONST. art. 5, §§ 2 (supreme court), 4 (court of criminal appeals), 6 (court of appeals), 7 (judicial districts). As noted, they may solicit and accept campaign funds. TEXAS CODE OF JUDICIAL CONDUCT Canon 4D(1). Detailed provisions govern campaign contributions for judicial elections. *See* TEX. ELEC. CODE ANN. §§ 253.001-.176 (Vernon Supp. 2000).

2

*Inter alia*, any "person" other than labor unions and most corporations may make financial contributions for the election of Texas judges. *Id.* §§ 253.091, 253.094. A judicial candidate may not accept more than $5,000 per individual per election for a campaign for a statewide judicial office or a judicial office in a district with a population exceeding one million. *Id.* § 253.155. If the judicial district's population is between 250,000 and one million, the candidate may *not* accept more than $2,500 per individual; and if the population is under 250,000, the limit is $1,000. *Id.*

Texas law treats law firms as individuals for purposes of contributions in the name of the firm. *Id.* § 253.157(a)(1). Once the combined contributions of the firm and its members to a single candidate for a single election reach six times the limit imposed on individuals, a candidate may not accept contributions of more than $50 from other members of the firm for that election. *Id.* § 253.157(a).

Texas imposes voluntary expenditure limits. *Id.* § 253.164. If a candidate decides to exceed those limits, however, he is still required to abide by the contribution limits imposed by Texas law. *Id.* § 253.164(b). If the expenditure limits are exceeded, the opponent generally is not subject to contribution or expenditure limitations. *Id.* § 253.165.

Texas judges are, of course, subject to disqualification and recusal rules.[2]  "No judge shall sit in any case wherein he may be interested."  TEX. CONST. art. V, § 11.  Under Texas law,

> A judge shall recuse himself in any proceeding in which:
>
> (a) his impartiality might reasonably be questioned;
>
> (b) he has a personal bias or prejudice concerning the subject matter or a party;
>
> ... [or]
>
> (e) he knows that he, individually or as a fiduciary, ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

TEX. R. CIV. P. 18b(2).

---

[2]For purposes of this opinion, "recusal" is used, based upon the parties' using that term, notwithstanding the distinction in Texas between disqualification and recusal:

> Disqualification and recusal are not synonymous terms. Disqualification of a judge on the constitutional grounds of interest, relationship to a party or having served as counsel in the case is absolute. TEX. CONST. art. V, § 11.  Disqualification cannot be waived and can be raised at any time, even by a collateral attack of the judgment.  On the other hand, recusal of a judge on any ground not enumerated as disqualifying in the Texas Constitution is governed by statute and rule. A party waives its right to recusal of a judge if it does not raise the issue in a proper motion.

*Aguilar v. Anderson*, 855 S.W.2d 799, 809-10 (Tex. App. 1993) (Barajas, J., concurring and dissenting) (citation omitted).

4

Texas courts have repeatedly rejected the notion that a judge's acceptance of campaign contributions from lawyers automatically creates either bias or the appearance of impropriety, necessitating recusal. *E.g.*, **Apex Towing Co. v. Tolin**, 997 S.W.2d 903, 907 (Tex. App. 1999) (no recusal required when judge received "substantial political donations from counsel and from one of the parties"), *rev'd on other grounds*, 41 S.W.3d 118 (Tex. 2001); **Aguilar v. Anderson**, 855 S.W.2d 799, 802 (Tex. App. 1993) (judge solicited and lawyer contributed while case pending but recusal not required); **J-IV Invs. v. David Lynn Mach., Inc.**, 784 S.W.2d 106, 107 (Tex. App. 1990) (no recusal where $500 contributed to judge after verdict but before decision on motion for judgment notwithstanding verdict).

Plaintiffs are two organizations and five Texas lawyers. Public Citizen, Inc., is a nonprofit consumer advocacy organization with an office and members in Texas. Plaintiffs allege that Public Citizen has been and will continue to be a party to, and appear as *amicus curie* in, litigation in Texas state courts. Because it is a corporation, it cannot contribute to judicial campaigns in Texas. TEX. ELEC. CODE ANN. §§ 253.091, 253.094. Public Citizen sues on behalf of itself and its members.

Likewise, Gray Panthers Project Fund is a national nonprofit advocacy organization with offices and members in Texas and, as a corporation, cannot contribute to judicial campaigns. It sues on

5

behalf of its members who have appeared, are appearing, or will appear as parties in Texas state courts.

The five lawyers practice in Texas and sue on their own behalf and that of their clients. They allege "that the current system of financing judicial elections creates the appearance, if not the reality, of partiality and impropriety of Texas state judges, to the detriment of the legal profession, [their] law practice[s], and [their] clients' interests".

The injury pleaded in the complaint is a systemic appearance of impropriety – no actual impropriety or a specific instance of an appearance of impropriety is alleged. Instead, Plaintiffs allege that

> recent surveys conducted by the Texas Supreme Court showed that 83 percent of the Texas public, 79 percent of Texas lawyers, and 48 percent of Texas state judges believe that campaign contributions have a significant influence on judicial decisions. Only one percent of lawyers and 14 percent of judges believe that campaign contributions have no influence.

Plaintiffs do not allege that such improper influence, or the appearance of such influence, was present in any specific case in which they have been, are presently, or in the future will be involved. Nor have they alleged contributions by opposing parties

6

or lawyers were involved or will be involved.[3]  Restated, they simply challenge the system.

Defendant moved to dismiss pursuant to Federal Rules of Procedure 12(b)(1) ("lack of jurisdiction over the subject matter") and 12(b)(6) ("failure ... to state a claim upon which relief can be granted").  The district court concluded:

> [C]ampaign contributions by parties with cases pending before the judicial candidate or by attorneys who regularly practice before them is not so irregular or "extreme" as to violate the Due Process Clause of the Fourteenth Amendment.[4]
>
> In addition and alternatively, the Court finds that Plaintiffs' Due Process challenge to the Texas judicial election system is a political question which is beyond the subject matter jurisdiction of the Court.

*Public Citizen, Inc. v. Bomer*, 115 F. Supp. 2d 743, 746 (W.D. Tex. 2000).  In sum, the district court held:  "The receipt of campaign

---

[3]Before the district judge ruled on the motion to dismiss, Plaintiffs moved for summary judgment.  Plaintiffs maintain we should consider their "undisputed" summary judgment evidence.  The evidence was not disputed, however, because the Texas Secretary of State's summary judgment response was stayed pending the ruling on his motion to dismiss.  The Rule 12(b)(6) dismissal was based, of course, on Plaintiffs' complaint, *not* their tendered summary judgment evidence.  Therefore, that summary judgment evidence is not properly before us on appeal.  *See, e.g.*, *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (in reviewing Rule 12(b)(6) motion, "[t]his court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts").

[4]Note that Plaintiffs did not allege that any plaintiff had a matter pending before a Texas court, let alone pending in a case in which an opposing party or counsel had made a contribution to the judge.

contributions alone does not rise to the level of a constitutional violation". *Id.* Accordingly, this action was dismissed.

## II.

"Trial before 'an unbiased judge' is essential to due process." *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) (citation omitted). Nevertheless "only in the most extreme of cases" does the Due Process Clause require disqualification of a judge. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 825-26 (1986); *see* *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948) ("most matters relating to judicial disqualification [do] not rise to a constitutional level"). For the requisite "extreme case", a party must show a judge has a "direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case". *Aetna Life Ins.*, 475 U.S. at 821-22 (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972); *Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927)).

Plaintiffs, however, do not allege — nor could they do so — that every lawsuit in Texas state court involves a situation in which one or more of the parties and/or attorneys have made campaign contributions to the presiding judge. Indeed, none of the Plaintiffs has alleged that one or more of the Plaintiffs, or any member of the two plaintiff organizations, or any client represented by one of the five plaintiff lawyers has ever been

8

involved in a case in which an opposing party or lawyer has contributed money to the presiding judge.

Instead, Plaintiffs rely in large part on *Ward v. Village of Monroeville* for the proposition that they can bring a systemic challenge under the Due Process Clause. 409 U.S. at 57. In *Ward*, plaintiff claimed the village's scheme of adjudicating and assessing certain fines was unconstitutional because the mayor adjudicated and assessed the fines and also oversaw the city budget, which was based in large part on revenue from the fines. *Id.* at 57-58.

The district court did not address Defendant's assertion that Plaintiffs lack standing. No authority need be cited, however, for the rule that any point properly raised in district court may be relied upon on appeal to sustain the judgment. In any event, and as is equally, if not more, well known, because "standing is a jurisdictional requirement, [it] may always be addressed for the first time on appeal". *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 555 n.22 (5th Cir. 1996).

Article III standing, at its "irreducible constitutional minimum", requires Plaintiffs to demonstrate: they have suffered an "injury in fact"; the injury is "fairly traceable" to the defendant's actions; and the injury will "likely ... be redressed by a favorable decision". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). In this

9

instance, we focus on the first element for standing:  injury in fact.

"[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical".  *Id.* at 560 (internal quotation marks, footnote, and citations omitted); *see* *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (citations omitted)); *Valley Forge Christian Coll. v. Americans United For Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("party who invokes the court's authority [must] show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" (internal quotation marks omitted)).

The injury-allegations at hand are too abstract and speculative to meet the constitutional standard for standing. *See* *Lujan*, 504 U.S. at 565 n.2 ("plaintiff alleges only an injury at some indefinite future time").  Representative of Plaintiffs' position is Public Citizen's allegation that, among Plaintiffs, their members, and their clients,

> [s]ome ... are financially unable to contribute to the judicial election in

10

> significant amounts, some can afford to contribute but choose not to do so because they oppose the current system of financing of judicial elections, and some contribute only because they believe that they have no realistic choice as lawyers who regularly practice in the Texas courts.

As stated *supra*, the lawyers allege that "the current system of financing judicial elections creates the appearance, if not the reality, of partiality and impropriety of Texas state judges to the detriment of the legal profession, [their] law practice[s], and [their] clients' interests".

Although, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice", **Lujan**, 504 U.S. at 561, Plaintiffs do not even plead a general injury that could support a claim. *See* **Anjelino v. The New York Times Co.**, 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by [, *inter alia*,] setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent...."). For example, felt pressure to contribute or the claimed appearance of partiality (which allegedly results in a vague "detriment" to the legal profession, the practice of law, and clients' interests) is simply insufficient. As noted, Plaintiffs focus primarily on the *appearance* of impropriety, but that too does not suffice.

In other words, Plaintiffs do not allege any personal "actual or imminent" injury. They point to no past case in which a

11

judgment was tainted by contributions; they mention no current litigation in which an opposing party or lawyer contributed to the judge's campaign; and they merely speculate as to the future. They seemingly suggest that their rights as litigants and attorneys are violated *per se* — regardless of whether the judge received a contribution from the opposing party or attorney and regardless of whether a reasonable judge would recuse himself — simply because the system allows for such contributions. Neither the mere fact of Plaintiffs' past appearances in Texas state courts nor their allegations of hypothetical future litigation support finding the "actual or imminent" injury required by Article III. *Cf.* **La Farguye v. Supreme Court of La.**, 634 F.2d 315, 315 (5th Cir. Unit A Jan. 1981) (no case or controversy when plaintiff "does not even allege that he has been denied either due process or equal protection in any [specific] matter"); **Ladd v. Hannigan**, 962 F. Supp. 1390, 1392 (D. Kan. 1997) (inmate alleging unconstitutional lack of access to courts "has not satisfied the standing requirement of 'actual injury' because he has not presented evidence that he suffered prejudice in a particular suit").

Nor is the alleged injury "concrete and particularized"; "particularized ... mean[s] that the injury must affect the plaintiff in a personal and individual way". **Lujan**, 504 U.S. at 560 & n.1. Plaintiffs assert that they need not allege direct injury when the wrong alleged is structural, but the case law they

12

cite is irrelevant.  To the contrary, and no matter how well intended, Plaintiffs have done little more than present a generalized grievance, common to all citizens or litigants in Texas, and as such, lack standing.  *See* ***Arizonans for Official English v. Arizona***, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not [create standing]."); ***Lujan*** 504 U.S. at 573-74 ("We have consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief [that] no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.").

In the absence of substantive factual allegations of injury, only an abstract claim remains.  For example, although Plaintiffs assert recusal is not constitutionally required in all cases, they do not describe in what instances failure to recuse crosses the constitutional threshold.  Indeed, their overbroad attack well illustrates why, for standing, a plaintiff must allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult

constitutional questions". ***Baker v. Carr***, 369 U.S. 186, 204 (1962).[5]

### III.

For the foregoing reasons, the dismissal of this action is

***AFFIRMED.***

---

[5]Because Plaintiffs' members and clients lack standing to sue on their own behalf, Public Citizen and Gray Panthers lack organizational standing to sue on behalf of their members, and the plaintiff lawyers lack third-party standing to sue on behalf of their clients. *See* ***Hunt v. Wash. State Apple Adver. Comm'n***, 432 U.S. 333, 343 (1977) (organizational standing requires, *inter alia*, that individuals have standing to sue in their own right).