**Ira VAUGHN and Bobby Vaughn d/b/a/ Oak Ridge Lounge and Christy Barber**

v.

**ST. HELENA PARISH POLICE JURY.**

Civ.A. No. 01–772–D.

United States District Court, M.D. Louisiana.

March 18, 2005.

As Amended March 23, 2005.

Aidan C. Reynolds, Aidan C. Reynolds, Trials & Appeals, Baton Rouge, LA, for Plaintiffs.

Scott G. Vincent, New Orleans, LA, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

The matter is before the Court on a motion for Summary Judgment filed by Defendant, St. Helena Parish Police Jury (doc. 116). The plaintiffs, Ira and Bobby Vaughn, d/b/a Oak Ridge Lounge and Christy Barber ("Ms. Barber") have filed an opposition (doc. 131). Defendants then

filed a reply (doc. 137). Oral argument is not necessary. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTUAL BACKGROUND

The Court provided an extensive discussion of the factual setting of this case in its ruling of December 6, 2001. None of these factual matters have changed importantly as of the presentation of this motion, so the Court adopts the findings published in *Vaughn v. St. Helena Parish Police Jury*, 192 F.Supp.2d 562, 565–67 (M.D.La.2001), and *Vaughn v. St. Helena Parish Police Jury*, 261 F.Supp.2d 553 (M.D.La.2002). The only developments are the following: after its destruction by fire, the Oak Ridge Lounge was rebuilt, and resumed full operations. The 5th Circuit remanded this matter in *Vaughn v. St. Helena Parish Police Jury* 82 Fed.Appx. 105, 2003 WL 22662965 (5th Cir.2003) back to this Court. The Court then met with the parties and discussed the remaining deficiencies of former Ordinance 216, namely the lack of a definition for the terms "partially nude," and "lewd, immoral, or improper entertainment, conduct or practices," as well as the application of the clothing restrictions to patrons of all establishments licensed to sell alcohol. The parties were urged to coordinate the redrafting of an amended ordinance to resolve these issues. The St. Helena Parish Police Jury alleges it began studying reports generated by other cities and cases detailing the secondary effects associated with adult businesses. St. Helena Parish drafted and adopted Ordinance 236 of 2004 on April 20, 2004. Ordinance 236 was drafted subsequent to a written offer to the plaintiffs to add any proposed amendments.[1] Ordinance 236 effectively amended Sections 14–43(a) and 14–80(a) of the former ordinance, Ordinance 216, to accomplish three fundamental changes. The prohibition against "partially nude" persons has been deleted altogether from Sections 14–43(a)(10) and 14–80(a)(10). Additionally, these sections have been revised to exclude patrons from the clothing restrictions imposed under the ordinance. Further, sections 14–43(a)(10) and 14–80(a)(10) now prohibit the Oak Ridge Lounge, or any other liquor sales establishment in St. Helena from: "permit[ing] or allow[ing] any *nude* agent, associate, employee, representative, or servant of a retail dealer, whether a dancer, entertainer, host or hostess, or waiter or waitress, on the premises." Moreover, Sections 14–43(a)(5) and 14–80(a)(5) have been amended to make clear that the prohibited "lewd, immoral or improper entertainment, conduct or practices" referenced in the statute include: "Permit(ting) any disturbance of the peace, obscenity, or any lewd or immoral or improper entertainment, conduct or practices on the licensed premises, as provided for in this article."

## PROCEDURAL BACKGROUND

On September 14, 2001 the Plaintiffs sought a declaratory judgment invalidating St. Helena Parish Ordinance 216, including a permanent injunction against its enforcement. Additionally, plaintiffs requested a preliminary injunction to stop the Parish from enforcing this ordinance until this litigation terminated. On December 6, 2001, this Court issued a preliminary injunction.[2] Defendants, St. Helena Parish Police Jury, then filed a motion to dissolve the preliminary injunction. The District Court denied the motion and upheld the preliminary injunction.[3] The defendants

---

**1.** See letter from Scott Vincent to Mr. Aidan Reynolds, dated April 12, 2004.

**2.** *Vaughn*, 192 F.Supp.2d 562, 565, 567 (M.D.La.2001)

**3.** *Vaughn*, 261 F.Supp.2d 553 (M.D.La.2002).

then appealed to the Fifth Circuit. The Fifth Circuit affirmed the District Court's opinion, and remanded the decision back to the District Court. *Vaughn v. St. Helena Parish Police Jury,* 82 Fed.Appx. 105, 2003 WL 22662965 (5th Cir.2003). The St. Helena Parish Policy Jury then adopted Ordinance 236 of 2004 on April 20, 2004. Defendants have now filed this motion for summary judgment, (doc. 116).

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[4] When the burden at trial rests on the non-movant, as it does here, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case.[5] The movant may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case.[6]

Although this court considers the evidence in the light most favorable to the non-movant, the non-movant may not merely rest on allegations set forth in the pleadings. Instead, the non-movant must show that there is a genuine issue for trial.[7] Conclusory allegations and unsubstantiated assertions will not satisfy the non-movant's burden. If, once the non-movant has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-movant, summary judgment will be granted.

## SUMMARY OF THE ARGUMENTS

Defendants filed this motion, asking this court to recognize the constitutionality of Ordinance 236. Defendants argue that prior to the enactment of Ordinance 236, the Parish of St. Helena experienced first hand the effects that nude dancing in establishments licensed to sell liquor can have on the community. In enacting Ordinance 236, St. Helena's Police Jury alleges it relied on both this prior experience, as well as studies and reports generated by other cities detailing the secondary effects associated with adult businesses. Based on this, the Parish reasonably believes that a link exists between the regulation of the dress of all employees of establishments licensed to sell alcohol and the furtherance of its legitimate governmental interest in targeting these secondary effects.

Plaintiffs counter arguing that Ordinance 236, like its predecessor, Ordinance 216, is vague and overbroad. Further, plaintiffs argue the Ordinance is overly restrictive as a matter of law, imposing a more stringent dress code upon their employees than is required to achieve the legislative effect. Specifically the petitioners argue that the ordinance violates their rights to freedom of expression under the First and Fourteenth Amendments, as well as their procedural due process rights. Further, plaintiffs argue that the defendants have provided no evidence, empirical or otherwise, to prove that their business resulted in negative secondary effects upon the neighboring area or resulted in a diminution in property values in the area immediately surrounding petitioner's club, the Oak Ridge Lounge.

---

**4.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**5.** *See Id.*

**6.** *See Id.*

**7.** *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS:

As Ordinance 236 is a new ordinance, this court is once again mandated to establish that the petitioners, Ira and Bobby Vaughn D/B/A the Oakridge Lounge and Christy Barber, have standing.

■ Article III standing requires the plaintiffs to demonstrate that (1) they have suffered an "injury in fact;" (2) the injury is "fairly traceable" to the defendant's actions; and (3) the injury will "likely … be redressed by a favorable decision." [8] "An injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized; or (b) actual or imminent, not conjectural or hypothetical." [9]

■ Plaintiffs stand to incur a direct injury resulting from the challenged official conduct that is both real and imminent.[10] Incorporating the relationships from the previous ruling, the court established that Ira and Bobby Vaughn own and operate the Oak Ridge Lounge. Although Ordinance 236 has not actually injured their legally protected interests, there is a real and immediate threat of such an injury.[11] If the Vaughns continue to offer erotic dancing in spite of Ordinance 236, they will be subject to losing the two alcohol licenses issued by the St. Helena Parish Police Jury. They also can be fined $500 and imprisoned for thirty days per violation of Ordinance 236. Further, Bob-

by Vaughn argues that if either 216 or 236 is enforced, and dancers are required to wear a full bikini, they would be in danger of losing the revenues necessary to continue to do business.[12] Thus, Ira and Bobby Vaughn have established an imminent injury in fact.

Moreover, Plaintiff, Christy Barber, has also established an imminent injury in fact. She has a legally protected interest in her First Amendment right to free expression. Erotic dancing in drinking establishments, while displaying her buttocks and lower portion of her breasts is her profession. In her affidavit, Ms. Barber avers that she continues to dance at the Oak Ridge Lounge but will be forced to quit doing so if Ordinance 236 or 216 is enforced, out of her alleged, legitimate fear that she might be subject to arrest, prosecution and/or conviction while performing.

Second, the plaintiffs' injury is fairly traceable to the defendant's actions in question here. The defendant is responsible for enacting Ordinance 236 on April 20, 2004. This ordinance prohibits the manner in which the plaintiffs are currently exercising their rights of free expression. More specifically, the ordinance prevents the Vaughns from providing erotic dancers at their Lounge who display their buttocks and the lower portions of their breasts.

8. *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir.2001); citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

9. *Public Citizen*, 274 F.3d at 217 (Citing *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

10. *Id.;* quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

11. This ruling will incorporate all of the arguments made in the 2001 decision concerning standing in this matter.

12. See Affidavit Ira Vaughn, paragraph 15. See also *Vaughn*, 192 F.Supp.2d 562, 565, 567 (M.D.La.2001) (stating "The plaintiffs think, as well, that if the erotic dancers completely cover their buttocks and the lower portions of their breasts, they will not be able to convey the erotic message that the new customers are coming to see. By wearing substantially more than pasties and a G-string, the erotic appeal of their dancing will be lost. Because regular dancing is prevalent in most bars, the Lounge will lose its unique appeal, and the increased revenue will disappear.")

Further, it prevents Ms. Barber from carrying on her chosen profession.

Finally, the plaintiffs have established this court's ability to redress their injury. If the enforcement of Ordinance 236 is enjoined, the plaintiffs will be able to continue exercising their rights to free expression in the manner they are exercising them today. More specifically, the plaintiffs will be able to continue offering erotic dancing, including the display by the dancers of their buttocks and the lower portion of their breasts.

Defendants, however, argue that plaintiffs alleged imminent injuries are both conjectural or hypothetical [13] and, should not be given creedance. Moreover, defendants argue that plaintiffs are selling their club and thus, their alleged imminent injuries in fact are not relevant here or for their future purposes.

As previously stated, the Oak Ridge Lounge is currently operating under the ownership of the Vaughns, and plaintiffs have each established an imminent injury in fact. Thus, this court will find that the plaintiffs, Ira and Bobby Vaughn and Christy Barber, have standing in this matter.

### First Amendment Analysis:

Defendants filed this motion for summary judgment alleging that Ordinance 236 cures the constitutional deficiencies that existed in the former Ordinance, making Ordinance 236 constitutionally sound. In their brief, defendants allege that in essence in *Vaughn v. St. Helena*, 82 Fed. Appx. 105 (5th Cir.2003), the Fifth Circuit upheld the clothing restrictions imposed under Ordinance 216 as to the dancers in the Oak Ridge Lounge, because they were indistinguishable from those upheld in *Baby Dolls Topless Saloons, Inc. v. City of Dallas*, 295 F.3d 471 (5th Cir.2002). Thus, defendants again set forth the similarities in wording between Ordinance 236 and the language of the ordinance upheld in *Baby Dolls*, and asks this court to grant summary judgment to uphold Ordinance 236 as constitutional.[14] As this Court will explain further below, though the language in Ordinance 236 is indistinguishable from that of *Baby Dolls*, the circumstances surrounding the passage of the ordinance in the instant case are highly distinguishable. Thus, questions remain as to whether Ordinance 236 is more restrictive than necessary to regulate dancers in erotic clubs in St. Helena Parish.

## I. OVERBREADTH

■ The overbreadth doctrine "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.' "[15]

As previously stated, this ruling will incorporate all prior rulings referenced in the opening paragraphs. In doing so, this Court again recognizes that although being in a state of nudity is not an inherently expressive condition, nude dancing of the type at issue here is expressive conduct that falls within the ambit of the First Amendment's protection.[16] To determine what level of scrutiny applies to the ordi-

---

**13.** *Public Citizen, Inc. v. Bomer*, 274 F.3d at 217–18 (5th Cir.2001); quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

**14.** *Id.*

**15.** *City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (citing

*Broadrick v. Oklahoma*, 413 U.S. 601, 612–615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

**16.** *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–566, 111 S.Ct. 2456, 115 L.Ed.2d 504.

nance at issue here, the court must decide whether the regulation is related to the suppression of expression.[17] As previously noted, where the governmental purpose is the prevention of negative secondary effects associated with erotic dancing establishments, that purpose is unrelated to the suppression of expression.[18] As established in prior rulings, St. Helena's alleged motive for the suppression is to ameliorate negative secondary effects associated with erotic dancing establishments. Under the plurality opinion of *City of Erie v. Pap's A.M*[19] the Ordinance at issue regulating public nudity should be evaluated under the framework set forth in *United States v. O'Brien*.[20]

## II. APPLICATION OF O'BRIEN TO CONTENT NEUTRAL RESTRICTIONS

■ Under the test set forth by the Supreme Court in *O'Brien* for content-neutral restrictions on symbolic speech, Ordinance 236 is valid if: (1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.[21]

■ As with its predecessor, Ordinance 216, Ordinance 236 fulfills the first three elements of the *O'Brien* test. The St. Helena Police Jury was within their constitutional power when it passed ordinance 236. The legislative comments to the enactment of Ordinance 236 states its purpose is to regulate businesses licensed to sell alcoholic beverages in order to promote the *health, safety, morals and general welfare* of the citizens of the Parish and to prevent the deleterious secondary effects of liquor establishments within the parish.[22] As established in our prior ruling, such efforts on the part of the Police Jury are clearly within its constitutional police powers.[23]

The second factor is whether the ordinance furthers an important or substantial government interest. Public health and safety problems caused by nude dancing establishments, like the Oak Ridge Lounge, can justify a ban in drinking establishments when it would "further the defendant's interest in *preventing* such secondary effects."[24]

---

**17.** *Pap's,* 529 U.S. at 289, 120 S.Ct. 1382.

**18.** *Id.* see also *City of Erie v. Pap's A.M.,* 529 U.S. at 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

**19.** 529 U.S. 277, 289, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000) (stating "if the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from O'Brien for evaluating restrictions on symbolic speech.") (citing *Texas v. Johnson,* 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *United States v. O'Brien,* 391 U.S. at 377, 88 S.Ct. 1673.)

**20.** 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

**21.** *Pap's A.M.,* 529 U.S. at 296, 120 S.Ct. 1382.

**22.** See Ordinance 236 of 2004, Chapter 14(a) "Regulation of Liquor and Alcoholic Beverages."

**23.** The Police Jury's efforts to prevent crime and to protect public health and safety are clearly within its police powers. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 569, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (stating "The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation").

**24.** *Pap's A.M.,* 529 U.S. at 301, 120 S.Ct. 1382 (emphasis added),

Additionally, Ordinance 236 satisfies the third factor, which requires that the government interest be unrelated to the suppression of free expression. Combating the negative secondary effects associated with nude dancing are sufficient to justify the requirement of a government interest. Furthermore, the ordinance is content neutral on its face, regulating only conduct and not free expression.

The fourth *O'Brien* factor mandates that the restriction on the First Amendment be *no greater than is essential* to the furtherance of the government interest. Again, this is where our court is forced to examine at length the language and effects of Ordinance 236.

## A. NOT GREATER THAN ESSENTIAL ANALYSIS

■ Ordinance 236 makes it unlawful for any holder of a retail or wholesale dealer license to:

.... Permit or allow any nude agent, associate, employee, representative, or servant of a retail dealer, whether a dancer, entertainer, host, or hostess, or waiter or waitress on the premises. [25]

NUDITY, NUDE, and STATE OF NUDITY are defined as:

(A) the appearance of a human bare buttock, anus, male genitals, female genitals or female breast; or

(B) a state of dress that fails to completely and opaquely cover a human buttock, anus, male genitals, female genitals, or any part of the female breast or breasts that is situated below a point immediately above the top of the areola.

The penalties for violating either of the above are the same, suspension, or revocation of the permit, or fine, not to exceed $500.00, imprisonment for thirty (30) days or both.[26] Moreover, the second to last paragraph of the Ordinance states that the provision prohibiting nudity in any establishment selling alcohol beverages shall be strictly enforced.[27]

Plaintiffs argue the minimal reformation of Ordinance 216 to create Ordinance 236 does not ameliorate the constitutional deprivations the law imposes. First, plaintiffs argue that the St. Helena Police Jury did not rely on any relevant studies concerning the secondary effects associated with adult businesses when drafting Ordinance 236. Further, argue that Ordinance 236 is as overly restrictive as its predecessor, and imposes a dress code that is more than necessary to further the government's legitimate interest in curbing the secondary effects. Finally, they allege Ordinance 236 is unconstitutionally vague and overbroad as it "lack[s] a workable definition of 'completely and opaquely cover, of any genital areas.' " [28]

The Supreme court has held that a city may rely on secondary studies from other cities, as long as the studies are relevant to the particular city's situation.

"The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be **relevant to the problem that the city addresses**." [29]

---

**25.** Ordinance 236, Section 14–43(a)(10), and Section 14–80(a)(10).

**26.** Ordinance 236, Section 14–43(c) & (d) and Section 14–80(c) & (d).

**27.** Ordinance 236, Section 14–125.

**28.** Opposition Memorandum p. 17.

**29.** *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 51–52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (emphasis added).

In doing so, St. Helena Parish must present evidence that fairly supports its rationale for passing the ordinance. The plaintiffs are then given an opportunity to cast doubt on this rationale, either by demonstrating that the parish's evidence does not support its rationale, or by furnishing evidence that disputes the parish's finding. If the plaintiff is unable to do so, the parish meets the standard as set forth in *City of Renton v. Playtime Theatres, Inc.*[30] However, if plaintiffs succeed in casting doubt on the rationale in either manner, then the burden shifts back to the parish to supplement the record with evidence renewing support for a theory that justifies its ordinance.[31]

In the preamble to Ordinance 236, St. Helena states that its rationale for the passage of the ordinance was to combat certain secondary effects cause by erotic dancing in establishments that sell alcohol including—prostitution and other illicit sexual behavior, drug trafficking, the spread of sexually transmitted diseases—and to prevent to the depression of property values and community blight. To support this rationale, it is necessary that St. Helena Parish demonstrate that the evidence cited by the legislative body, (i.e. secondary studies) reasonably support the legislative rationale. Further, St. Helena Parish must establish a reasonable belief that a link exists between Ordinance 236 and their substantial interest in combating secondary effects associated with adult entertainment.[32] Here, that standard is not satisfied.

In drafting Ordinance 236, the Parish alleges it relied on secondary studies and reports generated by other cities and cases dealing with secondary effects associated with adult entertainment facilities. By a

letter dated December 18, 2003, from Parish Attorney Clifton Speed, each member of the St. Helena Parish Police Jury received a summary of twenty-eight of the studies contained in the legislative record and was invited to review originals maintained by the Police Jury. Further, their brief alleges that the Police Jury reviewed the holdings and findings of cases from several circuits, in addition to several published articles concerning the regulation of sexually oriented businesses. From these secondary studies, the Police Jury alleges it made four findings associated with sexually oriented businesses such as the Oak Ridge Lounge:

(1) Establishments licensed to sell alcohol, especially those which offer adult entertainment, lend themselves to ancillary and unhealthy activities.

(2) There is a higher incidence of certain types of illicit sexual behavior by employees and patrons of adult cabarets and other sexually oriented businesses that sell alcoholic beverages than in similar establishments that do not sell alcoholic beverages.

(3) Some persons frequent certain liquor establishments, especially those that offer adult entertainment, for the purpose of engaging in sex in or off the premises for the purpose of purchasing or selling illicit drugs.

(4) Numerous communicable diseases may be spread by activities occurring in liquor establishments, including, but not limited to, syphilis, gonorrhea, human immunodeficiency virus infection (HIV–AIDs), and other various sexually transmitted diseases.

Based on the foregoing, the St. Helena police jury alleges it had a reasonable belief that there is a link between the dress

---

**30.** *Id.*

**31.** *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 426, 122 S.Ct. 1728, 1730, 152

L.Ed.2d 670 (2002) (citing *Erie v. Pap's A.M.,* 529 U.S. 277, 298, 120 S.Ct. 1382.)

**32.** *Baby Dolls,* 295 F.3d at 481–82.

of employees in establishments to sell alcohol and the furtherance of its legitimate government interest in regulating the aforementioned secondary effects.

The findings of the St. Helena Parish Police Jury include both the holdings, findings and interpretations of numerous cases from the Supreme Court, the Fifth circuit and the summaries of studies of secondary effects occurring in and around sexually oriented businesses in cities such as Phoenix, Los Angeles, Minneapolis, Austin, Dallas, Houston, and New York. Further, the Parish cites several articles published concerning sexually oriented businesses. The court, however, has not been presented with any evidence concerning the relevance of these studies to St. Helena's alleged problems. Further, upon the court's review of certain enumerated cases referenced by the defendants, the court finds that the cases are inapposite to the defendants' arguments.

In *Renton*,[33] the City of Renton passed an ordinance outlawing an erotic theatre from conducting business within 1000 feet of a school, church, residential zone, single- or multiple-family dwelling, or park. In creating the ordinance, Renton relied on the experiences of, and studies produced by the nearby City of Seattle and other cities concerning the secondary effects of adult businesses. In response, the owners of two adult motion picture theatres filed suit in Federal Court, challenging the constitutionality of the zoning ordinance under the First and Fourteenth Amendments.

The United States District Court for the Western District of Washington ruled in favor of the City. The Court of Appeals for the Ninth Circuit, reversed and remanded for reconsideration as to whether the City had substantial governmental interests to support the ordinance.[34]

On appeal, the Ninth Circuit held that the ordinance violated the constitution because it was a substantial restriction of defendant's First Amendment right to free speech. Further, without the benefit of studies specifically conducted in Renton, the City failed to establish the existence of a substantial government interest.[35] The Supreme Court granted writs and reversed.[36] the ordinance was enacted without the benefit of studies specifically conducted in Renton, the City had met its burden of proof by establishing that the studies conducted were *relevant* to the issues Renton was specifically attempting to combat.[37] Based on the research and evidence presented by the City of Renton, the Court was able to establish a reasonable belief that a link existed between the ordinance's purpose and the secondary effects of adult businesses.

Similarly, in *City of Los Angeles v. Alameda Books, Inc.*[38], the United States Supreme Court upheld a similar zoning ordinance to that of *Renton*.[39] In *Alameda*, the Supreme Court reversed the Ninth Circuit, holding that Los Angeles could reasonably rely on a study it conducted some years before enacting Ordinance 12.70(C) to demonstrate that its ban on

**33.** 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

**34.** *City of Renton v. Playtime Theatres, Inc.*, 748 F.2d 527 (9th Cir.1984), *rev'd*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

**35.** *Id.*

**36.** *Renton*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)

**37.** *Id.*

**38.** 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (U.S.2002).

**39.** 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

multiple-use adult establishments served its interest in reducing crime. In *Alameda*, Los Angeles produced a study whose conclusions found that a concentration of adult establishments in one locale was correlated with high crime rates because they would draw more adult consumers to the neighborhood. The Supreme Court held it was rational for the City to infer that reducing the concentration of adult operations in a neighborhood, whether within separate establishments or in one large establishment, would reduce crime. Justice Kennedy, in his concurring opinion, wrote "a zoning measure can be consistent with the First Amendment if it is likely to cause a significant decrease in secondary effects and a trivial decrease in the quantity of speech."[40] Based on evidence provided by the City, the Court held that Los Angeles satisfied its burden in demonstrating that its zoning ordinance served a substantial governmental interest, to combat the increase in crime rates, the decline in property values, and to protect the quality of the City's neighborhoods surrounding the adult businesses while trivially affecting the suppression of free speech.

Moreover, in *Baby Dolls Topless Saloons, Inc. v. City of Dallas*, the Fifth Circuit echoed the teachings of *Renton*, concerning the necessity to link secondary effects with evidence of some decline in the community and areas surrounding the adult business.[41] In *Baby Dolls*, the Fifth Circuit upheld a Dallas ordinance which expanded the definition of "sexually-oriented business" to include, *inter alia*, erotic dance clubs whose dancers wear less than full bikinis. Dallas sought the expansion because it was frustrated that such clubs had continually played along the margins of the law, in its earlier forms, by adjusting their dancers' attire in ways that did not resolve the City's worries about the secondary effects of these businesses. Unable to force the clubs to move to more appropriate locations within the city, Dallas passed a broader ordinance. The ordinance did not restrict nude dancing outright, but instead redefined the term "sexually-oriented business" and directed businesses that fell under the definition to operate at a wholesome distance from schools, parks, churches, and residential neighborhoods. Faced with the new ordinance, these clubs and other places of business had the following choice: (1) require performers to wear full bikinis, (2) close down, or (3) relocate to another location.[42]

In *Baby Dolls*, the Fifth Circuit held that the City was not required to show that the full bikini requirement would in fact relieve the secondary effects of the businesses. Instead, it held that the City need only establish "evidence [that] demonstrates a *link* between its interest in combating secondary effects and the Ordinance."[43] The Fifth Circuit applied the "reasonable belief" standard to determine whether the City's evidence demonstrated a link between its interests in combating secondary effects and the Ordinance.[44] Specifically, the court reiterated "that the government must present sufficient evidence to demonstrate 'a link between the regulation and the asserted governmental interest,' under a '*reasonable belief*' standard.....' "[45] In *Baby Dolls*, the Ordi-

---

**40.** *Alameda*, 535 U.S. at 445, 122 S.Ct. 1728 (Kennedy, J. concurring).

**41.** 295 F.3d 471 (5th Cir.2002).

**42.** *Id.*

**43.** *Id.* at 481. (emphasis in original).

**44.** *Id.* at 481. (Citing *J & B Entm't Inc. v. City of Jackson*, 152 F.3d 362, 371–72 (5th Cir.1998) (emphasis added); quoting *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925).

**45.** *Id.*

nance was enacted, in part, based on the City's findings that,

> concentrated SOBs [Sexually Oriented Businesses] "continue to contribute to . . . an increase in criminal activities in the surrounding community." Among other relied-upon data, the 1997 Malin Study supports that increased-criminal-activities finding. From January 1993 through March 1997, there were 396 arrests for sex crimes ("Rape, Prostitution/Commercial Vice[,] and other Sex Offenses") in the study area compared to 133 such arrests in one control area (containing two SOBs located approximately a half-mile apart) and 77 such arrests in another control area (containing no SOBs).[46]

Thus, in *Baby Dolls*, Dallas satisfied the standard by showing that there were significant continuing crime problems in higher concentration surrounding those businesses which were narrowly evading the classification of sexually oriented businesses. Through reliance on *studies conducted in both Dallas, and similar cities*, Dallas presented sufficient evidence to establish an existing correlation between sexually oriented businesses "hours of operations and the type of people the sexually oriented businesses attracted" and higher crime rates.[47] Dallas acquired evidence that the deleterious secondary effects continued under the pasties and G-string requirement *and* that Dallas had gained considerable experience with the dilatory tactics of the businesses it sought to regulate. These two facts operated to form a sufficient link, first, between the businesses and their secondary effects and,

second, between the governmental goal and its chosen means.

All the cases cited above provide some guidance to this court, specifically, that the St. Helena parish government *has* to present evidence sufficient to demonstrate a link between "the regulation and the asserted governmental interest" under a reasonable belief standard.

> The challenge is to correct the latter while leaving the former, as far as possible, untouched. If a city can decrease the crime and blight associated with certain speech by traditional exercise of its zoning power, and at the same time leave the quantity and accessibility of the speech substantially undiminished, there is no First Amendment objection. [48]

This applies even if the measure is in that sense content based. Though a city is not required by the First Amendment to conduct new studies to produce evidence independently relevant from the studies already generated by others, such evidence must ne reasonably believed to be relevant.[49] Such freedom allows a city the reasonable opportunity to "experiment with solutions to admittedly serious problems."[50]

Here, however, it is questionable as to whether (1) the secondary studies St. Helena relied on are relevant to problems the Parish is experiencing; and if (2) there is a reasonable belief that a link exists between a valid governmental problem or purpose and the ordinance at issue.

---

**46.** *Id.* at 481.

**47.** *Id.* at 481.

**48.** *Alameda*, 535 U.S. at 445, 122 S.Ct. 1728 (Kennedy, J., concurring).

**49.** *Alameda*, 535 U.S. at 451, 122 S.Ct. 1728 (citing *Young v. American Mini Theatres, Inc.*,

427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)).

**50.** *Id.* at 451, 122 S.Ct. 1728 (citing *Erie v. Pap's, A.M.*, 529 U.S. at 300–01, 120 S.Ct. 1382 (plurality opinion)).

St. Helena Police Jury presents this court with ample cites to secondary studies, yet, it never defined or offered any evidence of any actual or threatened "problem" shared between the cities in those studies and St. Helena Parish. Quite unlike the evolution of the litigation in *MD II Entm't, Inc. v. City of Dallas*,[51] which began in 1995, and ended with the Fifth Circuit's decision in *Baby Dolls*, in 2002, nothing of any factual or legal significance has changed in the case at bar. What changed in the *Baby Dolls* litigation, and what is at issue here, is that Dallas acquired actual evidence that the targeted deleterious secondary effects in fact continued under the "less restrictive" pasties and G-string requirements. St. Helena has not presented this court with any similar evidence.

Moreover, plaintiffs have provided this court with both empirical and objective evidence to show that the Oak Ridge Lounge, since its opening in 2001, with only a pasties and G-string requirement, has caused little to no negative secondary effects in St. Helena Parish. Included in the plaintiffs' evidence are affidavits from Joseph McNabb, Bobby Vaughn, Ira Vaughn, Christy Barber, and property assessments from St. Helena Parish Assessor's office for the years 2000–2003. In his affidavit, Joseph McNabb stated he personally reviewed the criminal records and offense reports of the St. Helena Sheriff's Office, and to the best of his knowledge and research, no records or reports of criminal activity have been filed with respect to the Oak Ridge Lounge within the last three years.[52] Additionally, Ira Vaughn, Bobby Vaughn and Christy Barber all effectuated affidavits that state to the best of their knowledge and research, there have been no reports, complaints, or arrests concerning sexual liaisons of a casual nature, lewd conduct, or indecent exposure, obscenity law violations, illegal drug use, prostitution or other related offenses in, around or associated with the operation of the Oak Ridge Lounge. Further, Ira Vaughn provided this court with copies of property assessments from the St. Helena Parish Assessor's for the years 2000 to 2003. In his affidavit, Mr. Vaughn attests he personally went to the Assessor's office on October 5, 2004, retrieved the assessments, and provided them to this court.[53] Based on solely on the review of these limited records, it appears to the court that, since its opening in 2001, the property value of the area immediately surrounding the Oak Ridge Lounge has not diminished.[54]

Defendants counter, stating that all the evidence provided by the plaintiffs is not supported by any empirical link to reality. Defendants argue that the affidavits in support are insufficient to meet plaintiff's burden of proof as they rely only on plaintiff's "information and belief."[55] Additionally, defendants argue that Ira and Bobby Vaughn's frequent absences from the Lounge, their failure to keep a vigilant watch and their lack of any mechanism for recording events that occur at the club prevent them from being qualified to speak as to such matters. Finally, defendants allege that the tax assessments are

---

**51.** *See MD II Entm't, Inc. v. City of Dallas,* 935 F.Supp. 1394 (N.D.Tex.1995) (*MD II*), aff'd 85 F.3d 624 (5th Cir.1996), *Baby Dolls Topless Saloons, Inc. v. City of Dallas,* 114 F.Supp.2d 531 (N.D.Tex.2000), and *Baby Dolls Topless Saloons, Inc. v. City of Dallas,* 295 F.3d 471 (5th Cir.2001).

**52.** *See* Affidavit of Joseph McNabb.

**53.** *See* Affidavit of Ira Vaughn, paragraphs 16 & 17.

**54.** *See* Statement of Contested and Uncontested Material facts, Exhibit 2, Tax Assessments from 2001, 2002 and 2003.

**55.** *See Alameda,* 122 S.Ct. at 1736.

objectionable because they only report the ad valorem tax value of the property, fail to indicate what specific time period they cover, and are not properly authenticated. Defendants claim that without actual, authenticated records of the fair market value of the surrounding areas made by a competent real estate appraiser, these tax assessments amount to nothing more than mere hearsay.

As stated in our prior ruling, at the time the Oak Ridge Lounge opened for business, St. Helena had an operating statute that required erotic dancers to wear pasties and G-strings. Rather than enforce that ordinance, the Policy Jury rapidly enacted a more restrictive law, Ordinance 216, then amended Ordinance 216 to form Ordinance 236. In enacting both of the Ordinances, the Police Jury was haunted by their prior experiences with the TNT club, which was shut down in 1999 by state alcoholic beverage investigators after witnessing the sale of pornographic material, and receiving unconfirmed reports of prostitution and drug sales at the club.[56] Although the Fifth Circuit stated that defendants in no way had to prove the prior ordinance was unsuccessful in combating the secondary effects before passing a new statute, the court is still bound to determine that the Parish holds a reasonable belief that a link exists between the new ordinance and the suppression of speech, justifying its legitimate sweep.[57] Unlike *Baby Dolls, Renton* or *Alameda,* no evidence has been presented by defendants to establish a link or to justify their rationale for drafting Ordinance 236. Additionally, the court has not been presented with

sufficient evidence that the secondary reports relied on by the Parish were relevant to any alleged problems whatsoever that the Parish alleges it needs to combat.

Plaintiffs have provided affidavits and research that analyze the historical status of St. Helena Parish since the opening of Ira and Bobby Vaughn's establishment. In doing so, plaintiffs have demonstrated that factual questions remain concerning whether (1) St. Helena's evidence supports its rationale; and (2) whether the St. Helena Police Jury had a reasonable belief that a link exists between the restrictions of Ordinance 236, and the furtherance of a *valid legitimate governmental interest or goal.*[58]

Based on the foregoing, the court finds that summary judgment is not appropriate.

## III. VAGUENESS:

 Under settled law, courts must apply an objective test for determining whether a statute is vague. "The determination whether a criminal statute provides fair warning of its prohibition must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants."[59]

When the case was originally set for trial, the only issues that remained concerning vagueness were the absence of a definition of the terms "partially nude" and "lewd, immoral, or improper entertainment, conduct or practices."

---

**56.** Investigators, however, never confirmed these allegations. *See Vaughn,* 192 F.Supp.2d at 571.

**57.** *See Vaughn v. St. Helena,* 82 Fed.Appx. 105, 2003 WL 22662965 (2003), *Vaughn,* 192 F.Supp.2d at 571, *Baby Dolls,* 295 F.3d at 481–82.

**58.** *See Baby Dolls,* 295 F.3d at 481 (5th Cir. 2002).

**59.** *Boyd v. County of Henrico,* 42 Va.App. 495, 592 S.E.2d 768, 779 (2004)(citing *Bouie v. City of Columbia,* 378 U.S. 347, 355 n. 5, 84 S.Ct. 1697, 1703 n. 5, 12 L.Ed.2d 894 (1964)).

The term "partial nudity". has now been deleted from Ordinance 236. Thus, any question as to the vagueness of the term is now moot. Further, in drafting Ordinance 236, the Police Jury endeavored to define the terms "lewd, immoral, or improper entertainment, conduct or practices." These terms are now defined to include, "Permit[ting] any disturbance of the peace, obscenity, or any lewd or immoral or improper entertainment, conduct or practices on the licensed premises, as provided for in this article." As such, this court finds that these terms, as included within the Ordinance, are now sufficiently defined to render this argument moot.

Plaintiffs now argue that the Ordinance lacks a definition of the phrase "completely and opaquely cover..." Specifically, in his affidavit, Ira Vaughn states that he fears that his determination of what are "completely covered" buttocks and breasts may not be the same as that of law enforcement and may subject him to arrest prosecution, conviction or loss of their liquor license. He argues that a "full bikini" that he has seen in public might not meet the strict requirements of "completely and opaquely covered."[60] Christy Barber also states she remains very confused as to the exact definition of the latter terms in Ordinance 236. She is concerned that, should her bathing suit accidentally "ride up" during a performance, she might be subject to prosecution, arrest, and/or conviction.

No where in the Ordinance is the phrase "completely and opaquely covered" defined. Similar language, however, was upheld by the Fifth Circuit in *Baby Dolls*. In *Baby Dolls*, nudity or a state of nudity is defined as, "a state of dress that fails to completely and opaquely cover a human buttock, anus, male genitals, female genitals, or any part of the female breast or breasts that is situated below a point im-

mediately above the top of the areola...."[61] Though here, the issue is different from that of *Baby Dolls*, the Fifth Circuit obviously feels such language is sufficient to fully warn others of the limitations imposed by the statute. Conversely, if a bikini bottom should accidentally ride up, or a random isolated "wardrobe malfunction" should take place, as long as the situation is immediately corrected, no resulting penalties should be imposed upon either the Vaughns or Ms. Barber.

Thus, this court is satisfied that no issues of vagueness remain.

## CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment is hereby DENIED as to the issue of overbreadth. The Motion for summary judgment is GRANTED as to the issue of vagueness.

---

60. *See* affidavit of Ira Vaughn, paragraph 14.

61. *Baby Dolls,* 295 F.3d at 477.